Hetrick M. HULING
v.
The UNITED STATES.
No. 455-61.

United States Court of Claims.
Oct. 18, 1968.
As Amended Oct. 25, 1968.

Robert H. Reiter, Washington, D. C., attorney of record, for plaintiff. Spaulding, Reiter & Rose, Washington, D. C., of counsel.

L. Ann Bowen, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

OPINION

COLLINS, Judge.*

This is a civilian discharge pay case, which comes before us on the merits, the

* The court is indebted to Trial Commissioner C. Murray Bernhardt, from whose opinion we have borrowed in part.

trial commissioner having submitted a report under Rule 67(c). In that same report, the commissioner also recommended rulings upon plaintiff's motion for summary judgment, motion to conform pleadings to proof, and motion to amend the complaint.

Plaintiff, a veterans preference eligible, was employed as a laborer, WB-3, Step 3, by the Department of the Air Force at the Air Force Flight Test Center, Edwards Air Force Base, California, from March 9, 1954, to December 3, 1956.

On October 29, 1956, plaintiff was served with a notice of proposed removal which contained five charges: (1) insubordination; (2) absence without leave; (3) failure to carry out instructions; (4) creating a disturbance affecting morale; and (5) falsifying official documents. Plaintiff answered the charges in writing on November 1, 1956. On November 30, 1956, plaintiff was notified by letter that he was to be separated from the service effective December 3, 1956. Both the notice of proposed removal and the notice of removal were signed:

BY ORDER OF THE COMMANDER:
    HENRY W. YAGEL
    Lt Col, USAF
    * * *

In the first instance, Colonel Yagel signed as "Chief, Installations Division, 6510th Air Base Group"; in the second, he signed as "Installations Engineer."

Plaintiff appealed his dismissal to the Twelfth Civil Service Region, which, after a hearing, affirmed the agency's action on February 15, 1957, basing its affirmation on all but the fourth of the five charges stated above. The Board of Appeals and Review of the Civil Service Commission affirmed the decision of the regional office on June 28, 1957.

On December 4, 1961, plaintiff filed his petition in this court, alleging that (1) his dismissal was procedurally defective, since the notice of proposed removal and the notice of removal were not signed by an authorized individual; and that (2) his dismissal was arbitrary, capricious, and so grossly erroneous as to imply bad faith because the employing agency, directly or indirectly, actually or impliedly, threatened reprisal against proposed witnesses, thereby precluding a fair and impartial determination of the case on its merits.

At the trial,[1] upon conclusion of plaintiff's case in chief, defendant, electing not to offer testimony, moved for dismissal under Rule 67(c) on the ground that, on the facts and the law, plaintiff had not shown a right to recover. The commissioner took the matter under advisement, pending the filing of briefs by the parties. On December 1, 1966, plaintiff, through an attorney, filed[2] the following motions: (1) motion for summary judgment; (2) motion to conform pleadings to proof; and (3) motion to amend the complaint. On December 15,

---

1. There were difficulties in getting the case to trial. Plaintiff, a man of modest means, failed to secure counsel to present his case on the two occasions, in 1965 and 1966, when trials were scheduled at Edwards Air Force Base in California. Both times a commissioner of this court, defense counsel, and plaintiff himself journeyed to the appointed place of trial. On the first occasion, plaintiff had neither counsel, witnesses, nor a court reporter present as timely instructions required, and trial was continued because of extenuating circumstances. On the second occasion, plaintiff again lacked counsel at the last moment and was required to pro-

ceed pro se. However, plaintiff has been represented by an attorney in this court subsequent to the trial.

2. Plaintiff actually filed only his motion to amend the complaint on December 1, 1966. In that motion he stated that "There is submitted simultaneously herewith a motion for summary judgment and to conform pleadings to proof." The latter two motions were not filed with the clerk until July 5, 1967. The commissioner, in his order of December 15, 1966, treated all the motions as having been filed on December 1, 1966.

1966, the commissioner entered an order granting defendant's motion to dismiss under Rule 67(c) and directing the parties to file requested findings of fact material to the issues raised by the motion, in addition to any supplemental briefs they might wish to file. On July 5, 1967, the commissioner filed his report pursuant to Rule 67(c) (3). In that same report, the commissioner recommended denial of plaintiff's motion for summary judgment, motion to conform pleadings to proof, and motion to amend the petition.

We approve the commissioner's proposed disposition of all the motions presented, although in some instances on different grounds.

We deal first with defendant's motion to dismiss under Rule 67(c). The first allegation in plaintiff's petition related to the propriety of the notice of proposed removal and the notice of removal served upon plaintiff. The applicable regulation[3] reads, in part, as follows:

> 15. *Designation of Officials to Sign Notices:*
>
> a. Letters of proposed adverse action and final decision based on consideration of employee's job performance, conduct, or suitability or for other reasons which are included within management responsibilities will be signed by designated management officials. * * *
>
> b. The following Management Officials are designated to sign letters of adverse action concerning employees under their supervision:
>
> \* \* \* \* \* \*
>
> Base Commander
>
> \* \* \* \* \* \*

As noted above, the notice of proposed removal, dated October 29, 1956, and the notice of removal, dated November 30, 1956, were both signed:

BY ORDER OF THE COMMANDER:
  HENRY W. YAGEL
  Lt Col, USAF

---

3. AFFTCR 40-7, Air Force Flight Test Center, Edwards AFB, Cal., Dec. 22, 1955, as amended by AFFTCR 40-7A,

\* \* \*

Thus, the question is whether the execution of the two notices complied with the regulation in force. Lieutenant Colonel Yagel, chief of the Installations Division, was not an official designated by the above regulation to sign such notices.

It seems clear from subparagraph 15a of the regulation that its drafters intended to insure that any action adverse to an employee would receive the consideration and approval of those officers in base positions having greatest personnel responsibility. By associating his name with an adverse order, an officer not only indicates his considered approbation of the measure, but places the weight of his position and rank behind it. It is for these reasons that, had Colonel Yagel signed the notices in his own name, they might well have been invalid.

The colonel, however, did not issue the notices in his own name. As the phrase, "By Order of the Commander," indicates, the documents rested upon the authority and position of the Base Commander, and not upon those of Colonel Yagel. The latter's name served only to authenticate the Commander's order. It is interesting to note in this regard that both AFFTCR 40–7 and AFFTCR 40–7A, the regulations in question, were promulgated by means of the same general signature form as contained in the disputed notices.

It is highly unlikely that the Base Commander would allow his name to be used without his approval or, in this context, without familiarizing himself with the reasons for the adverse action. In fact, Colonel Yagel and Col. William M. Brown, Jr., Chief of Staff for the AFFTC, stated by affidavit that the notice of proposed removal and the decision to remove were coordinated with and

Air Force Flight Test Center, Edwards AFB, Cal., Apr. 11, 1956.

approved by the Base Commander and other officers, including the affiants.[4]

Nor can we assume that Colonel Yagel would lightly use the name of his Base Commander without the latter's approval. Colonel Brown, in his affidavit, gave his opinion that Colonel Yagel "was authorized to take this removal action, including the authentication signatures on the letters of proposed action and decision."

Thus, because of this evidence, the presumption in favor of the validity of official acts,[5] and the absence of any evidence presented by plaintiff on this point, we cannot assume that Colonel Yagel acted without the Commander's knowledge and permission.

■ For these reasons, the notice of proposed removal and the decision to remove complied substantially, if not entirely, with the applicable regulation. If there is any violation of the regulation because of the Base Commander's failure to manually sign, it is so technical as to be inconsequential. See DeBusk v. United States, 132 Ct.Cl. 790, 795–796 (1955), cert. denied, 350 U.S. 988, 76 S.Ct. 474, 100 L.Ed. 854 (1956). Since, as indicated, the Base Commander approved of the removal action, there is no reason to believe he would not have signed the notices personally, clearly a valid documentation. Thus, plaintiff's position is in no way changed merely because another officer signed in his superior's

behalf. We hold that there was no fatal procedural defect in the notice of proposed removal or the notice of the decision to remove.

■ The second issue raised by plaintiff's petition was the allegation of arbitrary, capricious, or grossly erroneous action by the agency in directly or indirectly threatening with reprisal the plaintiff's prospective witnesses so as to preclude a full, fair, and impartial determination of the case. None of plaintiff's witnesses at the trial in May 1966 supported the allegations of threats and intimidation. On the contrary, each witness who had any knowledge of the issues swore, under oath, that he was not intimidated in any way by his superiors or by anyone else. Despite the possibility that fear may have made them less than candid, this court cannot deduce threats from their forthright denials under oath. Significantly, plaintiff's present counsel has not contended otherwise in his brief. We must conclude these witnesses were not induced to withhold their testimony for plaintiff by threats of reprisal, overt or otherwise.

We now reach issues raised by plaintiff's motion for summary judgment, motion to conform pleadings to the proof, and motion to amend the complaint. The motion for summary judgment rests on two grounds. First is the alleged procedural inadequacy of the removal

---

4. These affidavits were part of exhibits which the court, on its own motion, asked defendant to file. The purpose of such order was to complete plaintiff's exhibit No. 2, originally filed February 18, 1965, pursuant to the commissioner's pretrial memorandum filed that date. The original exhibit contained a copy of a motion to dismiss or, in the alternative, for summary judgment, filed by the United States District Attorney in a prior suit instituted by the plaintiff in the United States District Court for the District of Columbia (Civil Action No. 1401–58). After completion of oral argument, it came to the attention of this court that the copy of the motion included in plaintiff's exhibit No. 2 was incomplete in that certain exhibits (including the above

two affidavits) alleged to be part of the subject motion were missing. Therefore, the court ordered defendant to file certified copies of the missing district court exhibits.

The plaintiff should have no objection to the completion of his own incomplete exhibit. The copy of defendant's motion which plaintiff included in his exhibit No. 2 specifically stated that the abovementioned affidavits "are appended to this motion and made a part thereof." Plaintiff was at least on notice of their content and can make no claim of surprise.

5. Holman v. United States, 383 F.2d 411, 181 Ct.Cl. 1 (1967); Harrington v. United States, 161 Ct.Cl. 432 (1963).

notices—an argument already rejected. Second, plaintiff argues

&ast; &ast; &ast; that the record establishes that his deprivation of position was in violation of his constitutional rights by virtue of the fact that plaintiff's discharge was caused by a series of cruel and wanton acts, in utter disregard of plaintiff's rights, position, and physical well being, and for reasons other than the best interests of the government, namely, plaintiff's union activity, being for this reason contrary to law and violative of constitutional equal protection.

Primarily, plaintiff complains that he was assigned for an unconscionable period to an isolated sludge pit on the base where, under August temperatures approaching 120° in the Mohave Desert, he would break up, grind, and sack for fertilizer the sun-hardened sewage and human excrement filling the sludge pit. According to plaintiff, this chore was a form of punishment to which no one else was ever permanently assigned. Plaintiff's brief to the trial commissioner culled nine references from the trial transcript concerning plaintiff's alleged punitive exile to the sludge pit while ill, the hazardous working conditions there, the curtailment of his water breaks to 5 minutes on that detail, and discrimination against himself and other employees because of their union activities, all alleged to have grown from hostility of management to plaintiff.

In essence, plaintiff's allegations all go to support a charge of discrimination and arbitrary and capricious action on the part of agency officials. Defendant, on its part, denies all such allegations.

■ The issues of personal bias and prejudice raised by the motion for summary judgment were neither alleged in the petition nor reserved in the pretrial memorandum, and the record has not been molded to resolve them. It is unnecessary to consider the motion for summary judgment on these grounds because the case has already been tried. Plaintiff himself questions whether the present record is adequate to support his new theory and suggests the need to amend the petition and obtain further evidence. In any event, since defendant controverts these assertions of arbitrary and capricious action, plaintiff has therefore at the very most raised triable issues of fact, and summary judgment cannot be granted in that situation.

Plaintiff moves to amend his petition by incorporation of the following allegation:

The actions leading to plaintiff's dismissal were not taken for the purpose of the interest of the defendant, but were based on prejudice, personal bias, and antiunion discrimination, and were arbitrary and capricious, contrary to the statutes and regulations governing the federal civil service, and contravened the Constitution of the United States.

Plaintiff predicates this motion on the basis of conforming the pleadings to the proof (Rule 22(b)), and, independently, on general grounds (Rule 22(a)). Plaintiff contends that the "arbitrary and capricious" allegation in the original complaint is sufficiently broad to encompass the anti-union discrimination which he now seeks to allege by amendment and that the uncontradicted testimony of his witnesses before the court establishes the discrimination. Nevertheless, in the event that discrimination is not established by the present record, plaintiff asks the opportunity to support the proposed amendment with testimony by written interrogatories. As examples of the type of proof that would be offered, if permitted, plaintiff refers to three unsworn statements by potential witnesses who expressed the opinion that there was discrimination against plaintiff.

■ One objection to allowing plaintiff's amendment permitting new proof is that plaintiff, through his representative, deliberately waived the issue of anti-

union discrimination against him before the Civil Service Commission. Thus, under familiar principles, this issue is not before us. Plaintiff did not exhaust his administrative remedies since he failed to raise the issue at the administrative level. Walker v. United States, 179 Ct.Cl. 723 (1967), cert. denied, 389 U.S. 1036, 88 S.Ct. 772, 19 L.Ed.2d 825 (1968); Pine v. United States, 178 Ct. Cl. 146, 371 F.2d 466 (1967).

The question is narrowed, then, to whether we should allow plaintiff to amend the petition and present new proof concerning the other type of discrimination of which he complains, i. e., personal bias against him as an individual. In essence, plaintiff complains that his superiors were out to get him and successfully railroaded him because of their personal dislike for him.

■ We hold that plaintiff should not be permitted to amend his petition to include an allegation of personal bias and discrimination. The amendment would be useless without reopening the evidence to receive further testimony in some form, for the existing proof is not adequate to support the charge, as tokened by plaintiff's desire to offer additional proof. With a record of two abortive trials, plaintiff's proposal to embark on a new cause of action comes approximately 12 years after his discharge and 7 years after filing of this suit. Such action can only be entertained on the strongest of showings that a reopening of the evidence would offer something of substance. This, plaintiff has failed to do.

The samples of proof tendered by plaintiff in his motion do not give much assurance that evidence of probative value would materialize. One sample is an unsworn letter from one Talley that he believed plaintiff's sentence to the sludge pit was punishment for his union activity, although the same Talley, when testifying for plaintiff at trial, agreed that he knew nothing about the sludge pit incident and was not even employed on the base at that time. Another is an unsworn statement by one Newell which merely gives his conclusion that plaintiff was given "every dirty job on the base" for his union activities and for assisting his fellow workers against actions of an anti-union management. A third statement by one Mustoe, filed with plaintiff's motion for partial summary judgment in 1963, is a more comprehensive description of the alleged discrimination and harassing tactics of management against plaintiff because of his union activities. There is no more reason to believe that these individuals, if called to testify, would be any more apt to support plaintiff's position than were plaintiff's witnesses who were called at trial to prove reprisals and intimidation, but who denied them on the stand. Plaintiff has therefore failed to demonstrate his ability to present a convincing claim, were we to return the case to the commissioner for further trial proceedings.

To permit an amendment and further proof at this late date is impracticable and would merely and unreasonably prolong the already protracted litigation. These are matters within the discretion of the court, and, for the reasons given, the court declines to exercise its discretion in plaintiff's favor.

Since plaintiff failed to present a convincing case of discrimination at trial, and because of our disposition of plaintiff's motion to amend his complaint, plaintiff's motion to conform the pleadings to proof could not, if granted, assist plaintiff in any way. Therefore, the motion to conform the pleadings to proof is also denied.

In summary, the commissioner's recommendation that the petition be dismissed pursuant to Rule 67(c) (3) is accepted. The motion of plaintiff for summary judgment, his motion to amend the petition, and his motion to conform the pleadings to proof are denied. Plaintiff's petition is hereby dismissed.