Louis G. **RUDERER**

v.

The **UNITED STATES.**

No. 85–67.

United States Court of Claims.
July 16, 1969.

Louis G. Ruderer, pro se.

Katherine H. Johnson, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

NICHOLS, Judge.

Plaintiff, a non-veteran, was employed by the United States Army Aviation Materiel Command at St. Louis, Missouri, as an equipment specialist (GS–11) until his removal in January, 1965 on charges of

> * * * knowingly having made irresponsible, false and malicious statements against other employees, supervisors and other officials with the intent to harm and destroy the reputation, authority or official standing of those concerned and for insubordinate attitude and misconduct; thereby bringing discredit upon the Command, the Department of the Army and the Federal Service.

An agency review of plaintiff's removal upheld the Command's action. The St. Louis Regional Office of the Civil Service Commission affirmed, and subsequently the Board of Appeals and Review (BAR) did so too. Plaintiff then filed his petition in this court. Defendant moved to dismiss the petition on the ground that the claims alleged sounded in tort and therefore were not properly cognizable in this court, citing McCreery v. United States, 161 Ct.Cl. 484, 487–488 (1963). Defendant's motion was denied without prejudice, and plaintiff was given leave to amend his petition. His amended petition somewhat more clearly stated the basis of his claim for relief, but by order dated November 18, 1968, we granted defendant's motion for summary judgment on counts II–IV of the amended petition; we denied its motion as to counts I and V because it failed to designate the portions of the administrative record relied on to support its motion. The case is before us now on cross motions for summary judgment with respect to those counts. Count I is plaintiff's claim for pay for an allegedly wrongful denial of a periodic within grade pay increase, and count V is a

claim for back pay for an allegedly wrongful discharge. For reasons that follow, plaintiff's motion for summary judgment must be denied; defendant's cross motion is granted, and plaintiff's petition is dismissed.

### I. *Count I*

■ In a statement dated December 18, 1962, plaintiff's supervisor recommended against a within grade pay increase for plaintiff because he felt plaintiff was not performing at an acceptable level of competence for his grade. Among the reasons given for this determination were his poor attitude, his refusal to accept direction, and his inability to function as part of a team. Plaintiff was notified of the withholding of the increase. In October, 1963, he wrote the Commanding General of the Army Aviation Materiel Command claiming "redress for cumulative acts committed" against him, among them the withholding of his within grade pay increase. Plaintiff was given a grievance hearing which covered four areas including the matter of the within grade increase, and a report dealing with that matter was issued on January 25, 1966. Based on facts developed at the hearing, the grievance examiner recommended that the withholding of the step increase be sustained. Plaintiff received a copy of the report and was told that the decision to withhold the pay increase was final and "not subject to further review within the Department of the Army." Although plaintiff raised the issue of the wrongful withholding of his pay increase at the various stages of his appeal of his dismissal through the Civil Service channels, the Regional Office and the BAR opinions dealt only with his removal. At the time of this withholding there was no provision for review by the Civil Service Commission of the denial of a within grade pay increase, however, this situation has now changed. See 5 U.S.C. § 5335(c) (Supp. IV, 1965–1968). In the circumstances, we are reviewing the decision of the Department of the Army directly to determine if it was arbitrary or capricious.

See Creamer v. United States, 174 Ct.Cl. 408, 416, cert. denied, 385 U.S. 819, 87 S.Ct. 42, 17 L.Ed.2d 57 (1966).

■ Plaintiff originally seemed to be arguing that the withholding of his increase violated the Classification Act (presumably of 1949) which provided for in-grade pay raises if one had a "current performance rating of 'Satisfactory' or better." However, when notified that at the time his increase was withheld the Federal Salary Reform Act of 1962, 5 U.S.C. § 5335, (1964) was in effect and that to qualify for an increase under it plaintiff's work must be "of an acceptable level of competence as determined by the head of the agency," § 5335(a) (3) (B), plaintiff still argued that his increase was illegally withheld. He now maintains that his work was "of an acceptable level of competence" and that the reasons given for the withholding of the within grade increase were improper reasons under the standards of § 5335(a) (3) (B). In Creamer v. United States, *supra*, we held that "an acceptable level of competence" is not a "mechanical or automatic standard" and that the term "necessarily implies discretion and choice." *Creamer*, at p. 416. The agency in this case did exercise its discretion and, according to the grievance examiner, the withholding of plaintiff's increase was not—

> based solely on *technical* competence, quality or quantity of work *but was* based on the employee's performance of a non-acceptable level of competence predicated primarily on the employee's deficiency in personnel relationship and attitude toward co-workers and supervisors, and his inability to bend or work for group results. (Emphasis in original.)

We think that this standard by which defendant measured plaintiff's competence was not improper; the term competence "plainly evokes evaluation, appraisal, and assessment." *Creamer* at p. 416. The statute does not specify mere technical competence. If a person cannot follow directions or work harmoniously with fellow employees when his

job so requires, it is not arbitrary or abuse of discretion to hold he is not competent and is not entitled to pay increase under the terms of § 5335.

Plaintiff not only has not shown us that the decision to withhold his increase was arbitrary or unreasonable under the circumstances, but he has even in fact admitted that he deliberately provoked the withholding of the pay increase to take advantage of the Command's grievance procedures. When one consciously pursues a policy with a desired result in mind he cannot complain when he achieves that result. We find no basis for reversing the decision of the grievance examiner and the withholding of the pay increase is sustained.

## II. *Count V*

In November, 1964, plaintiff received a Notice of Proposed Removal which cited 30 specific incidents as grounds for the proposed removal. Subsequently he was removed from the Federal service effective January 11, 1965. The charges against plaintiff were twofold: first, that he knowingly made false and malicious statements against his fellow employees with the intent to harm their reputation, and second, that he displayed an insubordinate attitude and was guilty of misconduct. The allegedly false and malicious statements were made by plaintiff in letters to various officials in his Command and during sessions of plaintiff's above-mentioned grievance hearing. Plaintiff's alleged insubordination and misconduct stemmed from his actions at the grievance hearing and his "deliberate and flagrant misuse of Department of the Army grievance and appeals procedures," and specifically, that plaintiff deliberately provoked adverse actions against himself to be afforded a grievance hearing.

Plaintiff's charges and accusations against his fellow employees covered a wide range of matters. He accused them of deliberate falsehoods and fraudulent impropriety in the compiling of maintenance and training data on the equipment under the Command, of hiding communications from him about defects and problems within his branch of the Command rather than forwarding them to a higher authority or responding to them, of condoning inaccuracies in technical manuals at the expense of national security to effectuate a "yes" policy rather than hurt anyone's feelings, of actions tantamount to sabotage, and he accused one of his supervisors of being responsible for the loss of an airplane and the lives of 15 men in Viet-Nam. His accusations were quite specific, and he was not reticent about naming those he was accusing. The notice of removal to plaintiff specified the dates and places of his accusations in some detail. Plaintiff's response to the notice of proposed removal was to issue more accusations.

Among his other duties at the time it was proposed to remove him, plaintiff was responsible for compiling data on certain military equipment for a master data file and for revising maintenance and training publications when necessary. His Command was rapidly expanding and there were instances where errors and obsolete data were placed in the file, however, several investigations determined that this situation was not the fault of anyone specified by Mr. Ruderer and that this incorrect information had no significant effect on the operations of the Army in Viet-Nam. Plaintiff lodged his complaints with his superiors at the Command and also with Congressman Hebert of the House Armed Services Committee and Congressman Curtis from Missouri. Their inquiries into the situations plaintiff described revealed that the Army had been aware of the problems plaintiff described at least four years before plaintiff issued his first charges and that the Army had sought and was seeking to correct those problems long before plaintiff began to write his letters in 1963. Plaintiff's grievance hearing on the withholding of his step increase at which he made further accusations was held in June, 1964. The first

record we have of plaintiff's problems was in May, 1962, in a memo written by plaintiff's supervisor concerning his refusal to follow instructions and his generally antagonistic attitude. In December, 1962, it will be remembered, plaintiff was denied an in-grade pay increase, and in March, 1963, plaintiff wrote his Personnel Supervisor complaining about the withholding and leveling charges of mismanagement and worse at some of his fellow employees. A copy of this letter was forwarded to Congressman Hebert. The employees named in the letter wrote a memo to Civilian Personnel in May, 1963, because they felt that plaintiff's accusations were "of such serious nature that [they] * * * wish to be advised of what action can be taken to prevent Mr. Ruderer from continuing this sort of abuse." Their memo ended with:

> It is further requested that Mr. Ruderer be removed from Government Service as he is a menace to personnel who are doing a good job.

Not until November, 1964, however, was plaintiff given a Notice of Proposed Removal. He was removed effective January 11, 1965; he took an agency appeal of the decision to remove him and was given a lengthy hearing (the transcript filled 6,190 pages of testimony and consisted of 250 exhibits) from July 21, 1965, until September 27, 1965. After the hearing the decision to remove plaintiff was affirmed, although some of the original specifications which were not proved were dropped. It was held that, although some of plaintiff's allegations of administrative errors were factually correct, his "manner of making rash, irresponsible and false statements as to the causes and effects of such errors" were violations of regulations and that his removal was necessary to promote the efficiency of the service.

This decision was affirmed by the BAR. In order for us to overturn it, we must find that it was arbitrary and capricious or not supported by substantial evidence, or that plaintiff's removal was procedurally defective. Plaintiff argues that his removal was illegal because it was a "conspiracy of reprisal" for his having expressed certain grievances, for having brought to light certain errors and instances of mismanagement within the Command, and for his having exercised his right to petition Congress. Plaintiff also claims that his removal was procedurally invalid in that his notice of proposed removal and the notice of the final decision to remove him were both signed by military officers "FOR THE COMMANDER" in violation of CPR S-1 (Civilian Personnel Regulation) ¶ 2-2h. (23 August 1963) which provides that such notices should be signed by the appointing officer.

We shall first turn to plaintiff's charges that the notices were procedurally invalid because signed by a military officer. Plaintiff would have preferred to have had his notices signed by his immediate supervisor or by the Civilian Personnel officer. CPR S-1 ¶ 2-2h, provides that:

> * * * the advance notice must be dated and signed, either by the appointing officer, and individual designated to act for the appointing officer, or by the appropriate supervisor.

The Regional Office and BAR found, and plaintiff concedes, that the Commanding Officer was the "appointing officer" since this was a military organization. The signature of a military officer when authorized to sign "FOR THE COMMANDER" (Acts of officials are presumptively valid) has the same effect as if it had been signed by the Commander himself. *See* Huling v. United States, 401 F.2d 998, 1000–1001, 185 Ct.Cl. 407, 411, 412 (1968). We find no procedural defect in the notice of charges and removal having been signed by a military officer. As an aside, we note that one of the Command employees vilified by plaintiff was his supervisor and in such a situation it would have been unwise for the supervisor to have signed the notices. In Burkett v. United States, 402 F.2d 1002, 185 Ct.Cl. 631 (1968) where the charging

party, Burkett's supervisor, signed the notice of proposed removal, we said that "[i]n a case involving the writer's personal interests so directly and strongly, this was an insensitive practice which could better have been avoided." Burkett, *supra*, 402 F.2d at 1007 at 639. That this "insensitive practice" was avoided in this case we find no ground for invalidating the action.

■ In dismissing defendant's earlier motion for summary judgment on count V we did so partly because we thought that this case should be considered in light of our decisions in Swaaley v. United States, 376 F.2d 857, 180 Ct.Cl. 1 (1967); Burkett v. United States, *supra*; and Meehan v. Macy, 392 F.2d 822, modified on rehearing, August 23, 1968, modification affirmed on rehearing, en banc, May 12, 1969 (D.C.Cir. No. 20,-812). These cases involve Federal employees who were dismissed because of statements they made. However, we think that the situation in each of those cases was unlike the present one. In *Swaaley* there was a regulation which, as interpreted and applied, placed the burden of substantiating charges on the employee who made accusations, and the accuser was guilty of misconduct if unable to prove the charges. Swaaley was removed because he was unable to prove a charge he had made, though he might have thought it true. There is no such regulation here. Here there was no single cause for plaintiff's removal; he was removed for a whole series of intemperate statements evidencing a malicious attitude towards management. And here unlike *Swaaley*, we do not think that plaintiff's First Amendment rights were abridged. In *Swaaley* we stated the standard for measuring Federal employees' rights of free speech (376 F.2d p. 863, 180 Ct.Cl., p. 12):

> * * * There seems to be no reason, in the inherent nature of Federal employment, or otherwise, why New York Times Co. v. Sullivan, * * * should not be deemed, in the absence of legislation or regulation, to state the limits a federal employee may go towards defaming supervisory officials in the course of a petition, without loss of First Amendment protection.

Under the *Sullivan-Swaaley* standard, plaintiff would be entitled to First Amendment protection for his utterances unless made with " 'actual malice' that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). This was the standard by which the BAR measured plaintiff's conduct and it affirmed his dismissal. The BAR found that:

> * * * The totality and pattern, as well as the gravity of your unfounded, defamatory accusations, when considered in the light of the entire appellate record, establish, in our judgment, that you *knowingly made irresponsible, false, and malicious statements* against employees, supervisors, and officials with intent to harm and destroy the reputation, authority, or official standing of those concerned. (Emphasis supplied)

We agree; plaintiff displayed such reckless disregard of the truth in making his statements that they are outside any First Amendment protection.

The pertinent regulation, CPR 2, par. (2–4) 1 includes the following:

> * * * Specifically, employees are not permitted to make irresponsible, false, or defamatory statements for the express purpose of injuring others.

The table of penalties authorizes removal for:

> * * * Knowingly making false or malicious statements against other employees, supervisors or officials with the intent to destroy the reputation, authority or official standing of those concerned.

The BAR's language evidently tracks that of the Table of Penalties. The regulation expressly preserves to employees the right to "present information" of in-

stances of "deficiencies, irregularities, waste, fraud," etc. There is nothing either in the regulation or the proceedings of defendant's officials to suggest that if plaintiff had reported supposed instances of, e. g., fraud, but had merely been unable to prove them, he would have been removed.

The charges against Swaaley ultimately boiled down to but one when the CSC was through with his case. This was a statement in his letter to the Secretary of the Navy describing a conversation with a named official, and falsely attributing to him a corrupt proposal. The letter was in the most literal sense a petition for redress of grievances. Swaaley stated his grievance in the letter: he was not promoted when others less qualified were because they paid bribes. He addressed it to a person he must have supposed had power to redress the grievance, the head of his Department. Thus it was a petition. Had it been addressed to anyone not apparently having such power, its First Amendment status would have been more a matter for question.

We took notice of the fact that few persons can remember and report correctly the oral statements of others. We thought that in the total circumstances, including the fact that admittedly not everything was sweetness and light at Swaaley's place of employment, the possibility that he might have believed his statements true was a real one that could not properly be brushed aside in the framing of issues for the fact finders, as it was. In the instant case such a possibility would be a figment of the imagination. Mr. Ruderer followed a consistent course of impugning the integrity and motives of everyone who stood in his path. The multiplicity of his defamations, though not of itself the test, here is his undoing, because no sane person could really believe them all true. The findings are in effect that Mr. Ruderer did not believe his statements true, and for such findings the total circumstances afford substantial support. In light of the fact findings, the defamations are not petitions, having primarily other objects than redress of whatever grievances plaintiff may have had.

In Burkett v. United States, the plaintiff was removed for one of the same reasons Ruderer was removed: making malicious allegations against his superior with the intent to destroy his reputation. Our concern in *Burkett* was that the plaintiff had not received adequate notice of the charges against him and that the proof of his intent to harm anyone was inadequate. We thought that plaintiff was entitled to know why his statements were deemed malicious and what harm he was supposed to have intended to inflict. This was far from obvious from the statements themselves. In this case the Regional Office and BAR both agreed that plaintiff received proper notice and we support that determination. The notice of charges here was quite specific, and we think it adequately informed plaintiff of the nature of charges against him so that he could respond to them. His statements were such he could hardly be ignorant how they might cause injury. *Burkett* does not lay down a rigid rule, as in old time pleading, that certain allegations must be made whether or not needed for adequate notice.

But the chief difference in the two cases is that plaintiff, in the final analysis, was discharged to promote the efficiency of the service. As was said in Jenson v. Olson, 353 F.2d 825 (8th Cir. 1965), at p. 828:

> * * * [Plaintiff] may speak as he pleases and level charges at all suspects. But if the exercise of this privilege disrupts his own work and reduces the efficiency of the department he is subject to discharge for cause. The plaintiff has an absolute obligation to satisfactorily perform the duties and work inherent in his position.

Since *Swaaley* was decided the Supreme Court in Pickering v. Board of

Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) has indicated that public employees do indeed have First Amendment rights, limited by the New York Times v. Sullivan standard with respect to false statements animated by actual malice. Compare also Meehan v. Macy, *supra,* in which *Swaaley* is repeatedly referred to with approval, but distinguished on its facts.

■ A statute, now 5 U.S.C. § 7102 (Supp. IV, 1965–1968), provides that:

The right of employees, individually or collectively, to petition Congress or a Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof, may not be interfered with or denied.

The agency and the Civil Service Commission appear to have been aware of this, and not to have framed any charges against Mr. Ruderer that would have been contrary to its terms. Turner v. Kennedy, 118 U.S.App.D.C. 104, 332 F.2d 304, cert. denied, 379 U.S. 901, 85 S.Ct. 189, 13 L.Ed.2d 175 (1964), is a case involving the discharge of a Federal employee for communications to Congress. There is a dissent by Judge Fahy who would have remanded to the Civil Service Commission for reconsideration under New York Times v. Sullivan standards. The majority, however, affirmed the discharge without opinion. It thus does not appear that the statute confers an unlimited privilege to transmit knowingly false and malicious statements, which of course would be unhelpful to Congress. In any case, the few Congressional communications here involved would not throw a mantle of immunity over wrongful statements and acts not involving Congress; and no charge was preferred for any direct communication to Congress the plaintiff made. The most plaintiff could say was that other charges were trumped up in reprisal for 'his Congressional letters, but he failed to convince the triers of fact that this was true. Plaintiff was blind to the destructive effect which his intra-agency unbridled accusations could not but have had upon the mutual trust which is so necessary among Federal employees whose duties require them to work together.

Defendant calls our judicial notice to District Court suits instituted by plaintiff here against apparently some twenty-five persons, including former President Johnson, the former Chairman of the Civil Service Commission, John Macy, and Cyrus Vance. Many of the other defendants were connected with this case in some way. In one suit the United States itself is defendant. A group of these cases are disposed of in Ruderer v. Gerken, 284 F.Supp. 449–450 (E.D.Mo.1968). Defendant does not recite 28 U.S.C. § 1500 as a ground of its motion. What use we are supposed to make of the information is therefore not clear. It is evident that, from the beginning, plaintiff's handling of his disputes with his employers has not always been rational or in his own best interests. As often with *pro se* plaintiffs, we have strained our proper role in adversary proceedings to the limit, searching this lengthy record to see if plaintiff has a cause of action somewhere displayed. It would appear that one invoking the appeal procedures of the Civil Service Commission, and suing in the courts, is like one sitting down at an organ. He needs some understanding of the instrument before he can expect to elicit anything but a discordant noise. One lawsuit, conducted with understanding of the judicial process, would possibly be more fruitful for plaintiff than twenty-five conducted as this lawsuit has been. Plaintiff clearly is animated by a vast indignation, but one needs more than that to manage litigation with success. Indignation, unaccompanied by clear and logical exposition of relevant facts, is likely to impress as mere vindictive malice, as it did the administrative fact finders whose decisions are before us here.

We sustain the decision of the BAR, which we find to be supported by sub-

stantial evidence and not arbitrary or capricious. Defendant's cross motion for summary judgment is granted; plaintiff's motion is denied, and the petition is dismissed.