This case was argued before the court on cross-motions for summary judgment. There is no genuine issue of material fact. We hold in defendant’s favor and against plaintiffs.
Plaintiff George Perry, the former head of the Slavic Room of the Library of Congress (Library), and plaintiff Howard Cook, a present Library employee in the Reference Department, were disciplined for the distribution of defamatory statements about Dr. Paul Horecky, Mr. Perry’s superior. After a lengthy administrative hearing, plaintiffs were found to have distributed malicious and defamatory statements that Dr. Horecky had misrepresented his academic credentials during his 25 years of honorable service at the Library and was not entitled to be addressed by the term "doctor.” The hearing officer also concluded that these statements were made with reckless disregard of their truth or falsity and with malice. As a result of these disciplinary proceedings, Mr. Cook was given a 90-day suspension. Mr. Perry, who had been given a 90-day suspension in 1974 for other defamatory statements about Dr. Horecky, was removed from his position. The plaintiffs do not dispute that these statements violated Library of Congress Regulation (LCR) 2023-1.[1] Rather, plaintiffs argue that LCR 2023-1 is invalid as applied in that the regulation abridges their First Amendment rights and their statutory right under 5 U.S.C. § 7211 (Supp. II 1978)[2] to petition Congress.
*576 On this record, the Government must prevail simply because the plaintiffs have failed to demonstrate that this disciplinary action violated plaintiffs’ constitutional or statutory rights.
Pickering v. Board of Education, 391 U. S. 563, 568 (1968), makes clear that a Government employee may be discharged consistent with the First Amendment on the basis of his speech:
* * * At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.
See Arnett v. Kennedy, 416 U. S. 134, 160-161 (1974) (plurality opinion of Rehnquist, J.). In Pickering, the Court balanced the competing interests to conclude that a showing of malice or reckless disregard of the truth would be necessary to remove a teacher for defamatory statements about the school board. Although the Government argues actual malice or recklessness need not be shown where the defamatory statements actually disrupt an employment relationship, see Pickering, supra at 570 note 3 and 574; Meehan v. Macy, 392 F. 2d 822, 833 (D.C. Cir. 1968), modified, 425 F. 2d 469, aff'd en banc, 425 F. 2d 472 (1969), that is an issue we need not reach. This record adequately demonstrates reckless disregard of the truth on plaintiffs’ part. Prior to these particular defamations, the Library had conducted two formal investigations based on plaintiffs’ earlier allegations regarding Dr. Horecky. Both investigations dealt, at least in part, with Dr. Horecky’s credentials. Mr. Perry was involved in both investigations; Mr. Cook was a participant in the latter one and it would be impossible to conclude in light of his intimate involvement *577 with this matter that he was ignorant of the first. In addition, these plaintiffs conducted an extremely superficial investigation of the same topic which did not even include an interview with Dr. Horecky. On balance, plaintiffs’ "investigation” seems to have been designed more to embarrass than to uncover the truth. Thus, if Pickering requires that actual malice or recklessness be shown to sustain these disciplinary actions based on defamation, that burden has been met.
Moreover, if Pickering and the plurality opinion in Arnett, supra, require a mere balancing of the employees’ interest in making these statements with the Government’s interest in maintaining a viable work environment, we think the Government has also met its burden. This record demonstrates, and we find, that Mr. Cook’s and Mr. Perry’s conduct interfered not only with the working relationship between Mr. Perry and his supervisor, Dr. Horecky, but also with the relationship between Dr. Horecky and the division he was to oversee. Internal management is a proper concern, of the Government, and the controls exercised by the Library (i.e., eventual action under LCE 2023-1) were not unconstitutional. The record shows the Library acted in a restrained and proper manner in light of the sustained attacks plaintiffs made against Dr. Horecky and other staff members over a 3-year period. In 1973, the Library investigated Mr. Perry’s charges of discrimination by Dr. Horecky and concluded the charges were unfounded. The Library also carefully investigated in 1976 Mr. Cook’s and Mr. Perry’s charges that Dr. Horecky had misrepresented his academic credentials. In 1974, after Mr. Perry had made his first defamations of Dr. Horecky, the Library placed Mr. Perry on a 90-day suspension (rather than outright dismissal) and warned Perry against like statements. The Library did not impermissibly attempt to restrain Mr. Cook or Mr. Perry from appearing before Congress, nor does the record otherwise suggest the Library sought to restrain their speech away from work. Prior to the final hearing imposing these disciplinary actions, the Library apparently conducted a third investigation at Congressional request into Dr. Horecky and his credentials. This record convinces us that these disciplinary actions *578 against Mr. Perry and Mr. Cook under LCR 2023-1 were necessary to maintain a manageable work environment. The Library’s actions do not offend the First Amendment.[3]
As to plaintiffs’ claim of statutory protection for these actions, we reach a similar conclusion. The defamatory comments presented by the plaintiffs to the Congress are not mentioned in the charges leading to these disciplinary actions. Plaintiffs’ distribution of that testimony is not entitled to the protection of 5 U.S.C. § 7211 for the simple reason that the other Library employees and members of the public who were given the statements were not in a position to redress the plaintiffs’ grievances.
Thus, this case is essentially similar to Krennrich v. United States, 169 Ct. Cl. 6, 340 F. 2d 653, cert. denied, 382 U. S. 870 (1965), and Ruderer v. United States, 188 Ct. Cl. 456, 412 F. 2d 1285 (1969), cert, denied, 398 U.S. 914 (1970). In Krennrich we held that plaintiffs anonymous letters to superiors, fellow workers, and the wife of a fellow worker were not entitled to the protection of the First Amendment or the right to petition Congress. In Ruderer, we held that the dismissal of a civilian Government employee based on false and malicious statements made by the plaintiff against other co-workers and supervisors did not abridge the employee’s First Amendment or statutory rights of petition. Specifically, we said in Ruderer:
* * * The findings are in effect that Mr. Ruderer did not believe his statements true, and for such findings the total circumstances afford substantial support. In light of the fact findings, the defamations are not petitions [in the First Amendment sense], having primarily other objects than redress of whatever grievances plaintiff may have had.
*****
[Moreover, i]t thus does not appear that the statute [5 U.S.C. § 7102 (1964) (now 5 U.S.C. § 7211)] confers an unlimited privilege to transmit knowingly false and malicious statements, which of course would be unhelpful to Congress. In any case, the few Congressional communications here involved would not throw a mantle of *579 immunity over wrongful statements and acts not involving Congress; and no charge was preferred for any direct communication to Congress the plaintiff made. The most plaintiff could say was that other charges were trumped up in reprisal for his Congressional letters, but he failed to convince the triers of fact that this was true. Plaintiff was blind to the destructive effect which his intra-agency unbridled accusations could not but have had upon the mutual trust which is so necessary among Federal employees whose duties require them to work together.
Thus, plaintiffs were properly disciplined under LCR 2023-1; and we so hold.
Plaintiffs’ final argument is that the decision to separate Perry for the efficiency of the Library was too harsh. We disagree. The decision to separate Mr. Perry is a decision within the discretion of the employing agency. E.g., Kandall v. United States, 186 Ct. Cl. 900, 930, cert. denied, 396 U. S. 837 (1969). Separation decisions will not be overturned by a court if the decision was made in good faith and was reasonable in light of all the circumstances. Schlegel v. United States, 189 Ct. Cl. 30, 40, 416 F. 2d 1372, 1378 (1969), cert. denied, 397 U. S. 1039 (1970). Plaintiffs have failed to allege the existence of any evidence supporting their allegation that the Acting Librarian’s imposition of removal upon Perry was too harsh. To the contrary, in view of the serious nature of Mr. Perry’s misdeeds, the serious impact they were likely to have upon Dr. Horecky’s organization, and the ineffectiveness of the prior 90-day suspension of Mr. Perry in deterring his improper activities, the Acting Librarian acted well within his discretion in removing Mr. Perry. Since the choice of penalty to be imposed in adverse actions is committed to the discretion of the employing agency and cannot be overturned by the court unless there is a showing of a manifest abuse of discretion, we sustain the penalty of removal assessed against Mr. Perry. Tucker v. United States, 224 Ct. Cl. 266, 275-76, 624 F. 2d 1029, 1034 (1980); Heffron v. United States, 186 Ct. Cl. 474, 483-484, 405 F. 2d 1307, 1312 (1969); Grover v. United States, 200 Ct. Cl. 337, 353 (1973).
it is therefore ordered that defendant’s motion for summary judgment be and is hereby granted. Plaintiffs *580 motion for summary judgment is hereby denied. Plaintiffs’ petition is dismissed.
Plaintiffs’ motion for rehearing and suggestion for rehearing en banc were denied April 17, 1981; plaintiffs’ petition for a writ of certiorari was denied, 454 U.S. 894 (1981).

 LCR 2023-1 provides in relevant part:
"Section 2. Policy
"The maintenance of high standards of honesty, integrity, impartiality, and conduct by staff members is essential to assure the proper performance of the Library’s business and the maintenance of confidence by citizens in their Government. The avoidance of misconduct and conflicts of interest on the part of staff members through informed judgment is indispensable to the maintenance of these standards.
"Staff members shall not engage in criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct or conduct which adversely reflects on the Library, the Government, or their suitability for employment. The policy of the Library with respect to employee disloyalty, striking or rioting is that encompassed in 5 USC 7311-7313.”

 5 U.S.C.§ 7211 provides:
"§ 7211. Employees’right to petition Congress
"The right of employees, individually or collectively, to petition Congress or a *576 Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof, may not be interfered with or denied.”

 We also note the similarity between this regulation and those approved by the Arnett plurality, 45 C.F.R. §§ 1015.735-1 and 1015.736-24 (1972). See Arnett, supra at 164.