**Naila M. QURESHI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 04–382T.**

United States Court of Federal Claims.

Aug. 31, 2005.

Naila Qureshi, pro se, Plaintiff.

Elizabeth D. Seward, United States Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

This case concerns the automatic statutory application of the Alternative Minimum [Federal Income] Tax ("Alternative Minimum Tax"). *See* 26 U.S.C. § 55(a).

### RELEVANT FACTS AND PROCEDURAL BACKGROUND [1]

On March 10, 2004, Plaintiff, proceeding *pro se*, filed a Complaint in the United States Court of Federal Claims seeking a refund of federal income taxes for the 2002 tax year. The Complaint alleges a "failure to release [Plaintiff's] income tax refund for the year 2002 for taxes already paid in violation of IRS Policies P–2–10, P–4–7 and P–4–11[.]" Compl. at 1. The Complaint seeks a refund of federal income taxes in the amount of $3,744.00 and interest in the amount of $84,689.28. *Id.* In addition, the Complaint seeks $360,000.00 for damages allegedly incurred as a result of a delay in processing Plaintiff's 2002 federal income tax refund. *See* Pl. Cross–Mot. S.J. at 4–5 (unnumbered).

On April 15, 2003, Plaintiff timely filed a federal income tax return for the 2002 tax year, reporting: adjusted gross income of $67,490.14; itemized deductions of $26,681.07; an exemption of $3,000.00; and taxable income of $37,809.07. *See* Gov't App. B at 6–8. Plaintiff reported a total federal tax liability of $6,559.00; $10,303.01 of withheld income and excess FICA taxes; and requested a refund of $3,744.01. *Id.* at 7. No liability for the Alternative Minimum Tax was reported. *Id.*

Total itemized deductions reported for 2002 included state and local income taxes of $5,158.00 and $26,681.07 (net of the 2% floor of $1,349.80) of total miscellaneous deductions, including union dues, tuition, legal fees, and transportation expenses. *Id.* On the return, however, Plaintiff failed to include an

---

1. The facts recited herein were derived from: the March 10, 2004 Complaint ("Compl."); the United States ("Government")'s June 3, 2005 Motion for Partial Summary Judgment ("Gov't Mot. Partial S.J.") and Appendix thereto ("Gov't App."); Plaintiff's June 22, 2005 Cross–Motion for Summary Judgment ("Pl.Cross–Mot.S.J."); and the Government's July 25, 2005 Response ("Pl. Resp.").

additional $5,158.00 in state and local taxes paid and reported only $26,681.07 in total itemized deductions. *Id.*

The Internal Revenue Service ("IRS") selected Plaintiff's 2002 federal income tax return for examination. *See* Gov't App. B at 12. During the examination, the IRS increased Plaintiff's total itemized deductions by $5,158.00 to correct Plaintiff's failure to include that amount. *Id.* at 17. This reduced Plaintiff's adjusted gross income from $37,809.07, as originally reported, to $32,651.00. *Id.*[2] As a result, Plaintiff's federal income tax liability for 2002 was revised to $5,168.00. *Id.* The IRS also determined that Plaintiff's income was subject to the Alternative Minimum Tax[3] in the amount of $2,801.00. *Id.* Therefore, IRS added $2,801.00 to Plaintiff's revised regular federal income tax liability, for a total corrected federal income tax liability of $7,969.00. *Id.* This reduced the amount of Plaintiff's overpayment by $1,410.00, to $2,334.01. *Id.*

On March 11, 2004, the IRS issued a Notice of Deficiency in the amount of $1,410.00. *See* Gov't App. B at 13–16. Plaintiff did not file a Petition for Redetermination in the United States Tax Court.[4] Therefore, on August 9, 2004, the IRS assessed Plaintiff $1,410.00 in additional income tax for 2002. *Id.* at 24.

The Government has conceded that Plaintiff is entitled to recover an overpayment of $2,334.00, plus applicable interest thereon. *See* Gov't Mot. Partial S.J. at 5 n. 4; *see also* Pl. Resp. at 2. During an August 16, 2005 status conference, the Government also indicated that it had approved a partial settlement of this portion of Plaintiff's claim and that payment would be forthcoming. Therefore, the issues remaining for the court's disposition are: whether Plaintiff is liable for Alternative Minimum Tax for the 2002 tax

year; and whether Plaintiff is entitled to recover $360,000 for damages allegedly caused by the IRS' delay in processing the 2002 federal income tax return at issue.

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction to adjudicate federal tax refund suits. *See* 28 U.S.C. § 1346(a)(1); 28 U.S.C. § 1491(a)(1); *see also New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1558 (Fed.Cir.1997) (reaffirming the jurisdiction of the United States Court of Federal Claims over a suit concerning a federal tax refund). A jurisdictional prerequisite for adjudicating a tax refund suit is that the taxpayer make full payment of the tax liability, penalties, and interest. *See Flora v. United States,* 362 U.S. 145, 163, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (holding that a taxpayer must pay the full amount of income tax deficiency assessed before challenging its correctness in a refund forum).

In addition, the United States Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). In *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), the United States Supreme Court, however, held that 28 U.S.C. § 1491(a)(1) does not create any substantive right to monetary damages. Therefore, a complaint filed in the court must identify and plead an independent contractual relationship, constitutional provision, federal statute,

---

**2.** The IRS used whole numbers to recompute Plaintiff's federal income tax liability, eliminating seven cents from the $37,809.07 originally reported.

**3.** A taxpayer's liability for the Alternative Minimum Tax is calculated as follows:

(a) There is hereby imposed (in addition to any other tax imposed by this subtitle) a tax equal to the excess (if any) of—

(1) the tentative minimum tax for the taxable year, over
(2) the regular tax for the taxable year.
26 U.S.C. § 55(a).

**4.** A taxpayer has 90 days (or 150 days if the taxpayer resides outside the United States) from the date on which a Notice of Deficiency is mailed to agree to the proposed deficiency or file a Petition for Redetermination in the United States Tax Court. *See* 26 U.S.C. § 6213(a).

and/or executive agency regulation that provides a substantive right to money damages in order for the court to have jurisdiction. *See Khan v. United States,* 201 F.3d 1375, 1377 (Fed.Cir.2000) ("[T]o invoke jurisdiction under the Tucker Act, a plaintiff must identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages.").

In this case, Plaintiff paid the $1,410.00 tax deficiency at issue. Therefore, the court has jurisdiction over Plaintiff's refund claim.

### B. The Pleading Requirements For A *Pro Se* Plaintiff.

Traditionally, a *pro se* plaintiff's pleadings have been held to a less stringent standard than a litigant represented by counsel. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (holding that *pro se* plaintiffs are entitled to latitude). The United States Court of Federal Claims has a well-established tradition of exercising discretion "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969).

### C. Standard Of Review On A Motion For Summary Judgment.

If there is no genuine issue as to any material fact, the moving party is entitled to summary judgment as a matter of law. *See American Pelagic Fishing Co. v. United States,* 379 F.3d 1363, 1370–71 (Fed.Cir.2004) ("Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c). Only genuine disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.... That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* Where the non-moving party only proffers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

The burden of demonstrating the absence of any genuine issue of material fact is on the party moving for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that the moving party must meet its burden "by 'showing'—that is pointing out to the [trial court] that there is an absence of evidence to support the nonmoving party's case."). A summary judgment may be made without supporting affidavits and rely "solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324, 106 S.Ct. 2548. Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden shifts to the non-movant to establish the existence of a genuine issue for trial. *See Novartis Corp. v. Ben Venue Laboratories,* 271 F.3d 1043, 1046 (Fed.Cir.2001) (explaining that, once the movant has demonstrated the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial."). A dispute over a material fact is "genuine" where a reasonable jury could find for the non-movant. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The filing of a motion for summary judgment by a party requires that the trial court resolve all doubt over factual issues in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Likewise, all reasonable inferences and presumptions must be resolved in favor of the non-moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Caterpillar, Inc. v. Deere & Co.,* 224 F.3d 1374, 1379 (Fed.Cir.2000) ("When ruling on a motion for

summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor.").

## D. Resolution Of The Parties' Cross–Motions For Summary Judgment.

### 1. Plaintiff Is Liable For The Alternative Minimum Tax.

■ Plaintiff argues that this case "[has] nothing to do with the Alternative Minimum Tax but with the Educational Expense Deduction." Pl. Cross–Mot. S.J. at 1 (unnumbered). Plaintiff's arguments, however, focus on the exclusion of state and local taxes from itemized deductions on the 2002 federal income tax return and financial hardship allegedly imposed by the IRS' failure to release the 2002 federal income tax refund in a timely manner. Id. at 2–5 (unnumbered). The Complaint alleges that Plaintiff properly excluded certain state and local income taxes from the total itemized deductions, so there would be no liability for the Alternative Minimum Tax. See Compl. ¶ 17. Plaintiff, however, misperceives the automatic application of the Alternative Minimum Tax when certain statutory factors are established.

The statutory direction for computing the Alternative Minimum Tax is found at 26 U.S.C. §§ 55–59. First, a "tentative minimum tax" for the taxable year is imposed, in addition to the "regular tax"[5] for the taxable year. See 26 U.S.C. § 55(a). The "tentative minimum tax" for noncorporate taxpayers is the sum of 26% of the "taxable excess" that does not exceed $175,000, plus 28% of the "taxable excess" that exceeds $175,000. See 26 U.S.C. § 55(b)(1)(A)(i). "Taxable excess" means the amount of "alternative minimum taxable income" for the taxable year that exceeds the exemption amount. See 26 U.S.C. § 55(b)(1)(A)(ii). A noncorporate taxpayer's "alternative minimum taxable income" equals the taxable income for the taxable year, with certain adjustments. See 26 U.S.C. § 55(b)(2). For example, miscellaneous itemized deductions and state and local income taxes are not allowed in the computation of "alternative minimum taxable in-

come." See 26 U.S.C. § 56(b)(1)(A). Personal exemptions and the standard deduction are not permitted. See 26 U.S.C. § 56(b)(1)(E). "Alternative minimum taxable income" is then reduced by an exemption amount. See 26 U.S.C. § 55(d)(1)(B). For the tax year 2002, that amount was $35,750.00. See 26 U.S.C. § 55(d)(1)(B) (2002).

In this case, the IRS calculated Plaintiff's Alternative Minimum Tax as follows. First, the taxable income was $32,651.00, adjusted to reflect Plaintiff's failure to deduct certain state and local income taxes. Second, the alternative minimum taxable income properly was added back. Third, the personal exemption of $3,000.00, miscellaneous deductions of $26,681.00, and state and local taxes of $5,158.00 were deducted, and a state and local tax refund of $1,090.00 was subtracted. See Gov't App. B at 21. This resulted in alternative minimum taxable income of $66,400.00. Id.; see also 26 U.S.C. §§ 55(b)(1)(A), (b)(2). The IRS then subtracted the applicable $35,750.00 exemption to arrive at a taxable excess of $30,650. See Gov't App. B at 21; see also 26 U.S.C. § 55(b)(1)(A)(ii), (d)(1)(B). Then, IRS applied a 26% rate to the taxable excess of $30,650 to arrive at a tentative minimum tax of $7,969.00. See Gov't App. B at 21; see also 26 U.S.C. § 55(b)(1)(A)(i). Plaintiff's adjusted regular tax for the tax year 2002 was $5,158.00. See Gov't App. B at 21; see also 26 U.S.C. § 55(c)(1). Plaintiff's tentative minimum tax was $7,969.00, minus the adjusted regular tax of $5,158.00, resulting in an Alternative Minimum Tax of $2,810.00. See Gov't App. B at 21; see also 26 U.S.C. § 55(a). As a result, Plaintiff's total federal income tax liability for the tax year 2002 was $7,969.00. Id.

For tax year 2002, Plaintiff reported a total federal income tax due of $6,559.00 and paid $10,303.00 in federal income tax. See Gov't App. B at 6–7. As discussed herein, Plaintiff should have reported $7,969.00 in federal income tax for the 2002 tax year. As a result, Plaintiff owed an additional $1,410 in

---

**5.** "Regular tax" means the taxpayer's regular tax liability for the taxable year, as defined in 26

U.S.C. § 26(b), reduced by certain foreign tax credits. See 26 U.S.C. § 55(c)(1).

federal income tax and the IRS correctly assessed that amount on March 11, 2004. *See* Gov't App. B at 24.

For these reasons, the Government's Motion for Summary Judgment regarding Plaintiff's liability for the Alternative Minimum Tax is granted.

### 2. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Plaintiff's Claims For Damages Arising From The Government's Alleged Delay In Processing Her 2002 Federal Income Tax Refund.

█ The Complaint alleges that the Government's delay in processing Plaintiff's federal income tax refund for the tax year 2002 caused Plaintiff to incur approximately $360,000.00 for damages. *See* Pl. Cross–Mot. S.J. at 4–5 (unnumbered).[6] The amounts include: $30,000.00 for "lease foreclosures;" $40,000.00 for loss of personal property resulting from eviction proceedings; $40,000.00 for "payment issues dealing with creditors;" $250,000.00 for the "ancillary effect of poor credit reporting with missed monthly payments possible;" and "interest overpayment of $4,140.29."[7]  *Id.*

█ It is well settled that the Internal Revenue Service Manual is not the law and therefore not binding on the Government. *See Ghandour v. United States*, 37 Fed.Cl. 121, 126, n. 14, *aff'd per curiam*, 132 F.3d 52 (Fed.Cir.1997) (internal citations omitted) ("We note that the [Internal Revenue Manual 'does] not have the force and effect of law,' is 'adopted solely for the internal administration of the IRS ... [, and] does not confer any rights upon the taxpayer.'"). In addition, oral statements of IRS employees are not binding on the Government. *See Estate of Akin v. United States*, 31 Fed.Cl. 89, 97, *aff'd per curiam*, 43 F.3d 1487 (Fed.Cir.1994) ("'[I]n a civil tax case ... the [Government] cannot be estopped by any statements made by an individual IRS employee, even where

the taxpayer may have relied on those statements to his detriment.'"). Therefore, as a matter of law, there is no cause of action for an alleged violation of IRS procedures or alleged oral statements of IRS employees.

### 3. Plaintiff's Claim For Overpayment Interest Is Moot.

The court has determined that Plaintiff is not entitled to an overpayment of $1,410.00, in addition to the $2,334.00 overpayment to which the Government has conceded Plaintiff is entitled. The Government has represented that the parties have reached an agreement regarding Plaintiff's overpayment claim for the 2002 tax year. Accordingly, Plaintiff's claim for interest is moot.

### CONCLUSION

For the foregoing reasons, the Government's Motion for Partial Summary Judgment is granted. The Clerk of the Court is ordered to enter a Final Judgment in accordance with this Memorandum Opinion and Final Order.

**IT IS SO ORDERED.**

---

**6.** The Complaint did not provide specific amounts. *See* Compl. at 1–3. These amounts are asserted for the first time in Plaintiff's Cross–Motion for Summary Judgment. *See* Pl. Cross–Mot. S.J. at 4–5 (unnumbered).

**7.** It is unclear from the pleadings whether Plaintiff has conceded a portion of the $84,689.28 in interest originally claimed in the Complaint. *See* Compl. at 1.