Avabelle **BASKETT, et al.,**

v.

**The UNITED STATES.**

**Nos. 161–78, 340–78, 317–79L, 311–80L and 616–80L.**

United States Claims Court.

May 6, 1983.

Norman E. Hay, Cannelton, Ind., for plaintiffs. Charles S. Gleason, Indianapolis, Ind., of counsel.

Hubert M. Crean, Washington, D.C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D.C., for defendant.

## ORDER

LYDON, Judge:

In these five consolidated cases, some 95 owners of some 135 tracts of land adjacent to the Ohio River have sued to recover damages which they allege they have incurred, and are continuing to incur, as a result of activities relating to construction and operation of some 7 high-lift dams by the United States Army, Corps of Engineers (Corps). The issues are identical to those raised by some 23 different owners of land adjacent to the Ohio River in *Loesch v. United States,* 227 Ct.Cl. 34, 645 F.2d 905, *cert. denied,* 454 U.S. 1099, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981).

On August 3, 1981, a pretrial order on liability was entered in these cases. Plaintiffs' response to this pretrial order was submitted on or about December 7, 1981. Defendant's response to the pretrial order and reply to plaintiffs' response was submitted on or about September 13, 1982. Plaintiffs' reply to defendant's pretrial response was submitted on or about November 15, 1982. Plaintiffs have listed and identified 97 potential exhibits, whereas defendant has listed and identified 1034 potential exhibits. It is estimated, given the large number of witnesses which the parties anticipate calling, that a trial of some four (4) months can be expected under present circumstances. Defendant has listed 13 prospective witnesses. Plaintiffs have listed some 90 specific prospective witnesses but have also listed by classification a number of additional prospective witnesses, otherwise unidentified, *e.g.,* county assessors and county auditors of each county where

plaintiffs' lands are located, Directors of Soil Conservation Service for each such county, etc. Plaintiffs' potential witness list could easily exceed 200. Under these circumstances both the court and the parties are under some obligation to make efforts to delimit the number of trial days and to take other steps to reduce the expense and effort generally associated with long trials of the duration estimated herein.

Defendant, on November 22, 1982, filed a "Motion In Limine," pursuant to Rule 16 RUSCC, seeking a pretrial order that precludes the admission of evidence at trial with respect to the flowage easement issue. Defendant also filed a second "Motion In Limine", on November 22, 1982, seeking to preclude testimony by some of plaintiffs' proposed witnesses. In effect, defendant seeks to limit the number of witnesses plaintiffs advise they intend to produce at trial. A motion in limine is a recognized method for getting an early ruling on trial matters. See C. Wright & A. Miller, Federal Practice and Procedure, Sec. 5037, p. 193; see also Zenith Radio Corp. v. Matsushita Elec. Ind. Co., 505 F.Supp. 1125, 1139–41 (E.D.Penn.1980). Plaintiffs, on December 21, 1982, filed a response to both motions in limine. This response given the nature, detail, specificity and legal citations, supporting defendant's motions in limine, was most inadequate. Defendant's motions were based on the pleadings, certain documentation, and the pretrial submission of the parties.

There are two basic issues in these cases. The first basic issue involves the question of whether the construction and the operation of certain high-life navigation dams on the Ohio River are responsible for the erosion that plaintiffs claim is, and has been, taking place on their properties adjacent to the Ohio River. This will be referred to as the erosion issue. The second basic issue, which will be referred to as the flowage easement issue, involves the question of whether Corps of Engineers personnel, or other government personnel, committed fraud or misrepresentation in the acquisition of flowage easements from plaintiffs in connection with the construction of the dams in question. Embraced within this broad fraud and misrepresentation question are subsidiary questions as to whether there are serious irregularities, fraudulent in nature, in the flowage easements themselves which serve to render them void, and as to whether ordinary high-water mark determinations made in connection with the preparation of the flowage easements were erroneous and thus misrepresented to plaintiffs.

It is deemed appropriate to consider first that motion in limine which seeks to eliminate the flowage easement issue as a viable triable issue. Thereafter, attention will be given to the second motion in limine which seeks to preclude testimony from certain individuals and/or groups of individuals plaintiffs propose to call as witnesses at trial.

## I.

There is no question under RUSCC 16, that this court, as a trial court, has the power to issue pretrial orders simplifying issues for trial. Not only does this court have such power, it has a duty to exercise it in appropriate cases. This power allows the court, inter alia, to define the issues, facts, and theories actually in contention and to weed out extraneous issues. Too, this court also has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence. 6 C. Wright and A. Miller, Federal Practice and Procedure, Sec. 1525, at 586–589 (1971) and cases cited therein.

In this case, defendant's first motion in limine, which seeks to preclude the admission of evidence on the flowage easement issue is, in effect, a request for a dispositive pretrial ruling eliminating such an issue from these cases. The thrust, therefore, of defendant's first motion is to obtain a favorable judgment before trial on the flowage easement issue, thereby leaving the erosion issue as the sole issue for trial.

A federal trial court has considerable leeway in the use of its Rule 16 pretrial power and may appropriately rule, prior to trial, on the question of jurisdiction, see,

*Nelson v. Keefer,* 451 F.2d 289 (3d Cir. 1971); *A.H. Emery Co. v. Marcan Products, Corp.* 389 F.2d 11, 20 (2d Cir.1968), *cert. denied,* 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106; the legal sufficiency of a claim or defense, *see American Machine & Metals, Inc. v. DeBothezat Impeller Co.,* 82 F.Supp. 556 (S.D.N.Y.1949), *aff'd* per curiam 173 F.2d 890 (2d Cir.1949), *cert. denied,* 339 U.S. 979, 70 S.Ct. 1025, 94 L.Ed. 1383; *see also Schram v. Kolowich,* 2 F.R.D. 343 (E.D.Mich.1942); and/or the ultimate merits of a particular claim where the undisputed facts indicate an unequivocal right to a judgment favoring a party. In *Wirtz v. Young Elec. Sign Co.,* 315 F.2d 326, 327 (10th Cir.1963), it was noted that: "Summary disposition of a cause may logically and properly follow a pretrial conference when the pretrial procedures disclose the lack of a disputed issue of material fact and the facts so established indicate an unequivocal right to judgment favoring a party." *See also, Holcomb v. Aetna Life Ins. Co.,* 255 F.2d 577, (10th Cir.1958), *cert. denied,* 358 U.S. 879, 79 S.Ct. 118, 3 L.Ed.2d 110. In *Klein v. Belle Alkali Co.,* 229 F.2d 658 (4th Cir.1956), the court held that where a judge determined that on the pleadings and the admitted facts there was no issue of fact and no ground upon which plaintiff could recover, it was perfectly proper that he say so and direct that proper steps be taken to dispose of the case in an orderly way. *See also* 3 J. Moore, *Moore's Federal Practice,* Para. 16.- 16, 16.21 (3d ed. 1982). Contrary to the implication plaintiffs seek to create in their reply to defendant's motion in limine, Rules 101, 401 and 402 of the Federal Rules of Evidence do not inhibit use of in limine rulings. Indeed, such rulings are encouraged in circumstances now before the court. *See Zenith Radio Corp. v. Matsushita Elec. Ind. Co., supra,* 505 F.Supp. at 1140–1143. Accordingly, the general purpose of Rule 16 clearly supports determining, as requested by the motion in limine, whether a trial on the merits of the flowage easement issue is justified or not. *See* 6 *C. Wright and A. Miller, Federal Practice and Procedure,* Sec. 1529 (1971).

## II.

Defendant's first motion in limine is directed at eliminating the flowage easement issue as a triable issue in these cases. From the materials at hand and armed with knowledge gained from the *Loesch v. United States, supra,* trial and decision, it appears that plaintiffs' flowage easement claims rest on the following general allegations: fraud and misrepresentation in the acquisition of flowage easements, including fraudulent irregularities in the easement documents, and misrepresented erroneous ordinary high-water mark determinations which were utilized in the easements. As to these general allegations, defendant first argues that plaintiffs failed to properly plead, under RUSCC 9(c), facts which constitute fraud and misrepresentation. Second, defendant maintains that the flowage easement claims of certain plaintiffs are barred by the statute of limitations. Third, defendant contends that certain plaintiffs lack standing to maintain a cause of action concerning the acquisition of flowage easements because (1) they were not the owners of the property at the time of the conveyance or condemnation of the easements, and (2) said claims are barred by the Assignment of Claims Act, 31 U.S.C. Sec. 203. Fourth, defendant contends that certain plaintiffs have no flowage easement claims for the simple reason that the government did not obtain any flowage easements from them. Fifth, defendant argues that certain plaintiffs from whom flowage easements were acquired by condemnation in district court actions are barred by *res judicata* from litigating claims based on said easements.

In considering the various arguments presented by defendant, attention will first be directed at defendant's second, third, fourth and fifth arguments with the first argument to be considered last.

### A. *Statute of Limitations*

■ Defendant contends that claims by certain plaintiffs which are based on or arise out of flowage easements acquired by the government are barred by the applicable statute of limitations. 28 U.S.C. Sec.

2501, as amended. The court may appropriately rule on this defense under its Rule 16 pretrial power. *See Schram v. Kolowich,* 2 F.R.D. 343 (E.D.Mich.1942).

■ A claim accrues for statute of limitation purposes when all the events have occurred which fix the liability of the United States to a claimant and which entitle the claimant to sue thereon. *Japanese War Notes Claimants Ass'n of Phillipines, Inc. v. United States,* 178 Ct.Cl. 630, 373 F.2d 356 (1967), *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461, *rehearing denied,* 390 U.S. 975, 88 S.Ct. 1020, 19 L.Ed.2d 1192 (1968); *Sauer v. United States,* 173 Ct.Cl. 642, 354 F.2d 302 (1965). In this case, the date of conveyance of each flowage easement marked the time when all events occurred which fixed the liability of the government from any claim relating to, or based on, said flowage easement and which entitled a plaintiff to sue thereon. Plaintiffs do not contest this point in their response to defendant's motion, nor do they plead or put forth any fact showing that the statute of limitations was, or should be, tolled. In response to defendant's statute of limitation defense, plaintiffs assert the following:

> B. Aerial Survey Maps. Plaintiffs' contend Judges, Lawyers, Surveyors, County Recorders, and County Assessors cannot read easements. Government must prove easements are good. Land descriptions can be corrected at any time just like a court judgment based on a mistake of fact.

Plaintiffs have failed completely to address the merits of defendant's argument.

The policy behind the statute of limitations is to protect the United States from defending against stale claims and was designed to prevent situations where circumstances relevant to proving and defending against such claims have changed over time, thus precluding reconstruction of past events with any pretense of accuracy. *Friedman v. United States,* 159 Ct.Cl. 1, 34, 310 F.2d 381, 401 (1962), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691. The Court of Claims emphasized this very point in *Loesch v. United States,* 227 Ct.Cl. 34, 645 F.2d 905, 924–25 (1981), in holding that the statute of limitations barred identical claims filed by similarly situated owners of land along the Ohio River from whom the government had purchased flowage easements in connection with the construction of three high-lift navigation dams on the Ohio River, which three dams are also involved in these cases.

The following plaintiffs conveyed flowage easements to the government on the dates set forth in parenthesis next to their names. Copies of these flowage easements were submitted in support of defendant's motion in limine. The date the complaint was filed is set forth in parenthesis next to the case docket number. The easement dates utilized by defendant were not contested by plaintiffs in their reply to defendant's motion in limine.

*No. 161–78* (Pet. filed 4/14/78)

| | |
|---|---|
| Cole, Bayward J. and Mary Ann (# 4) | (9/20/66) |
| Edgerton, Hazel (# 7) | (9/17/65) |
| Heron, Margrete Nielsen (# 10) | (7/14/65) |
| Knear, Mackey and Mary Jane (# 11) | (5/16/66) |
| Schrader, William and Caroline (17) | (8/10/65) |

*No. 340–78* (Pet. filed 7/25/78)

| | |
|---|---|
| Blake, Richard E. (# 3) | (10/22/65) |
| Bruington, Marvin E. (# 4) | (4/8/65) |
| City of West Point, Kentucky (# 6) | (1/26/68) |
| Goss, Edward A. and Helene L. Goss (# 16) | (2/8/66) |
| Hagman, Harold V. Sr. and Dorothy (# 18) | (6/5/64) |
| Hart, Edwin A. (# 20) | (12/9/66) |
| Marshall, Carl W. (# 28) | (7/26/65) |
| Nienaber, George L. and Charmaine (# 33) | (7/31/61) |
| Popham, N.A. (# 35) | (11/25/65) |
| Shearn, Alvin E. (# 40) | (6/24/64) |
| Stauth, Carl E. (# 43) | (8/10/65) |
| Withers, C.H. and Julia K. (# 49) | (10/4/66) |

*No. 317–79L* (Pet. filed 7/18/79)

| | |
|---|---|
| Bell, John B. and Nancy B. (# 2) | (7/11/66) |
| Elder, Clara E. (# 7) | (9/25/65) |
| Hendry Acres, Inc. (# 8) | (9/17/64) |
| Mangin, Wallace (# 13) | (1/10/66) |
| Rayburn, Hobert and Helen H. (# 18) | (4/6/62) |
| Smart, G.K. (# 20) | (9/9/65) |

*No. 616–80L* (Pet. filed 11/17/80)

| | |
|---|---|
| City of Covington, Kentucky (# 1) | (7/17/62) |

Uncontested facts show that as to the plaintiffs identified above, the flowage easements were acquired from them by the government on or before January 26, 1968. The petitions in these five cases, however, were not filed in the Court of Claims within 6 years after the acquisition dates of these flowage easements. Therefore, the flowage easement claims of these plaintiffs are barred by the statute of limitations. *See Soriano v. United States,* 352 U.S. 270, 273–74, 77 S.Ct. 269, 271–272, 1 L.Ed.2d 306 (1957). The flowage easement claims of these plaintiffs are to be dismissed and accordingly are no longer deemed triable issues in these cases.

### B. *Standing*

■ Defendant next contends that certain other plaintiffs lack standing to maintain flowage easement claims in these cases because they were not the owners of the properties involved at the time of the conveyance or condemnation of the flowage easements in question. The standing doctrine is derived from the "case or controversy" requirement of Article III of the United States Constitution which requires that a plaintiff must show some threatened or actual injury to himself resulting from a putatively illegal action. *See Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In this category, defendant identifies the following plaintiffs:

*No. 161–78* (Pet. filed 4/14/78)

| | |
|---|---|
| Baskett, Avabelle | (1) |
| Buechter, Mary Stephenson | (2) |
| Cannon, Gilbert & Sharon | (3) |
| Cole, James L. | (6) |
| Egger, George | (8) |
| Knear, Mackey & Mary Jane | (11) |
| Krutz, Dorothy | (13) |
| Marrs, Howard B. | (15) |
| Pannett, Clarence | (16) |
| Terry, Emmett & Mildred | (18) |

*No. 340–78* (Pet. filed 7/25/78)

| | |
|---|---|
| Allen, David & Eva | (1) |
| Barks, Earl | (2) |
| Cooper, Elmer | (9) |
| Crowe, Estelle & John | (10) |
| Fried, Robert | (14) |
| Gerdon, William | (15) |
| Hagman, Francis P. | (17) |
| Hagman, Harold V. | (19) |
| Hart, Edwin A. | (20) |
| Hemer, Louis & Phyllis M. | (22) |
| Hollis, Walter & Ruth | (23) |
| King, Nettie G. | (25) |
| Mathis, Frances | (29) |
| McGee, Raibourn & Kathy | (30) |
| Myers, Raymond & Loretta | (31) |
| Rudd, Henry | (38) |
| Williams, Herman T. | (47) |

*No. 317–79L* (Pet. filed 7/18/79)

| | |
|---|---|
| Allen, Donald | (1) |
| Chamblee, Richard & Joan | (6) |
| Leedy, Charles | (10) |
| Lutgring, Charles | (11) |
| Rayburn, Hobert & Helen | (17) |

*No. 616–80* (Pet. filed 11/17/80)

| | |
|---|---|
| Alexander, David | (2) |
| Johnson, Gary & Diana | (3) |

*No. 311–80L* (Pet. filed 6/17/80)

| | |
|---|---|
| Owens, Thurman | (4) |

Plaintiffs do not contest the fact that these plaintiffs did not own the properties in question at the time the flowage easements related thereto were acquired by the government.

Since plaintiffs, identified above, did not own the properties in question at the time the flowage easements were acquired by the government, they are not the persons entitled to compensation even if, in fact, compensation were to be held due relative to said flowage easement acquisitions. *United States v. Dow,* 357 U.S. 17, 20, 78 S.Ct. 1039, 1043, 2 L.Ed.2d 1109 (1958); *Lacey v. United States,* 219 Ct.Cl. 551, 560, 595 F.2d 614, 619 (1979). *See Loesch v. United States, supra,* 227 Ct.Cl. at 55, 645 F.2d at 931, n. 22.[1]

---

1. Defendant also contends that the flowage easement claims of these plaintiffs are barred by the Assignment of Claims Act, 31 U.S.C. Sec. 203 (1976). In essence, defendant argues that since the flowage easements relating to the properties in question were acquired by the government from persons other than plaintiffs, any claims related thereto belong to such other persons and any assignment of said claims, by sale of the properties to plaintiffs, is void under the provisions of section 203, *supra.* This contention has surface appeal. *See United States v. Shannon,* 342 U.S. 288, 291–94, 72 S.Ct. 281, 283–285, 96 L.Ed. 321 (1952). Plaintiffs have not responded to this argument. In light of the disposition of the claims of these plaintiffs on the grounds set forth above, it is not necessary

Plaintiffs offer no substantive response to these contentions. In their reply to defendant's first motion in limine, plaintiffs state: " * * * Defendant has created a cloud on titles of plaintiffs. Easements 'float.' Cloud on titles must be removed. Plaintiffs have 'standing to sue'." This is the extent of their response. This court has no jurisdiction to quiet title to land and thus, if plaintiffs seek to quiet title to the properties in question they are in the wrong court.

For reasons set forth above the flowage easement claims of these plaintiffs are to be dismissed and accordingly are no longer deemed triable issues in these cases.

### C. No Flowage Easements Acquired

■ Defendant further argues, relative to a different set of plaintiffs, that the flowage easement claims of these plaintiffs should be dismissed on the ground that no flowage easements were acquired by the government regarding properties owned by said plaintiffs. These plaintiffs are identified as follows:

*No. 161–78* (Pet. filed 4/14/78)

| | |
|---|---|
| Egger, George E. | (8) |
| Fisher, Warren | (9) |
| Lorch, Bruce | (14) |

*No. 340–78* (Pet. filed 7/25/78)

| | |
|---|---|
| Cline, Harry Sr. (presume estate Minnie Cline, Executrix) | (8) |
| Cunningham, Harold and Julia | (12) |
| DeVore, Harry R. | (13) |
| Nelson, Joseph A. | (32) |
| Southern Indiana Rural Electric Coop., Inc. | (42) |
| Taylor Properties, Inc. | (46) |
| Winkler, Martin & Dorothy | (48) |

*No. 317–79L* (Pet. filed 7/18/79)

| | |
|---|---|
| Campbell, John | (3) |
| Campbell, Phillip | (4) |
| Carrico, Arthur (assume this to be Carraco, Malcolm) | (5) |
| Kruger, Arthur | (9) |
| Moore, Gilbert & Helen | (14) |
| Perchik, Benjamin & Helen | (15) |
| Reid, Ben A. | (18) |

*No. 311–80* (Pet. filed 6/17/80)

| | |
|---|---|
| Boone County, State of Kentucky | (1) |
| Deckard, H. Joel | (2) |
| Keller, Charles E. | (3) |

to base dismissal of these claims on the ground

It seems to be conceded that no flowage easements were acquired as to these plaintiffs. Plaintiffs state in their reply to defendant's first motion in limine that "[t]here was no fraud in procuring easements that were not procured." There is, thus, no factual dispute between the parties on this issue. Because flowage easements were not acquired from said plaintiffs, they have no flowage easement claims and any such claims are to be dismissed. *See Loesch v. United States, supra,* 227 Ct.Cl. at 54, 645 F.2d at 920, n. 18. As a result, there are no triable flowage easement issues in these cases as to these plaintiffs.

### D. Res Judicata

■ Finally, defendant contends that the flowage easement claims of still another set of plaintiffs are barred by *res judicata.* In this category defendant lists the following plaintiffs:

*No. 161–78* (Pet. filed 4/14/78)

| | |
|---|---|
| Cole, Dorothy | (5) |
| Cole, James L. (Tracts 3611–E1, E2 and 4006–E1, E2, E3) | (6) |
| Knear, Edward & Lillian | (12) |

*No. 340–78* (Pet. filed 7/25/78)

| | |
|---|---|
| Bullock, Jesse E. | (5) |
| Cline, Harry, Jr. & Rosemary | (7) |
| Cline, Harry, Sr. (Estate Minnie Cline, Executrix) | (8) |
| Haynes, Edith S. | (21) |
| Jones, Elmer Lee | (24) |
| Klinstiver, Chester | (26) |
| Popham, N.A. | (35) |
| Richardson, Lorena S. | (36) |
| Rolsen, John H. & Loretta | (37) |
| Shacklette, Ora C. | (39) |
| Williams, Herman T. | (47) |

*No. 317–79L* (Pet. filed 7/18/79)

| | |
|---|---|
| Pike Heirs | (16) |
| River Ridge Park, Inc. | (19) |
| Sonner, Roy C. | (21) |

*No. 616–80L* (Pet. filed 11/17/80)

| | |
|---|---|
| City of Covington, Kentucky | (1) |

Plaintiffs' reply to this contention is that "[c]ourts make and correct mistakes every day. Why should Plaintiffs be harmed because they trusted Judges and attorneys who didn't know what they were doing." Further plaintiffs state, in response to the res judicata contention of defendant, that " * * * Government must prove easements

said claims are void under section 203, *supra.*

are good. Land descriptions can be corrected any time just like a court judgment based on a mistake of fact."

■ The doctrine of res judicata, or claim preclusion, provides that once " * * * a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit * * * are thereafter bound 'not only to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)." Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); see also Oglethorpe Co. v. United States, 214 Ct.Cl. 551, 557, 558 F.2d 590, 594 (1977); J. Moore, 1B Moore's Federal Practice, Sec. 405[3] (3d ed. 1982).

Here, there is no question but that the same parties were before the court in the condemnation proceedings which resulted in the government's acquisition of the flowage easements in question. Plaintiffs do not contest the fact that the flowage easements of these plaintiffs were acquired by condemnation nor do they assert that they did not have a full and fair opportunity to raise the flowage easement issue here in question during the condemnation proceedings. Therefore, said plaintiffs' flowage easement claims must be barred under the doctrine of res judicata. Com'r. v. Sunnen, supra; Oglethorpe Co. v. United States, supra.

This result is entirely consistent with the policy behind the res judicata doctrine. Res judicata precludes " * * * parties from contesting matters that they have had a full and fair opportunity to litigate, protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–974, 59 L.Ed.2d 210 (1979). To permit plaintiffs to litigate the flowage easement claims in these cases, which they had a full and fair opportunity to raise and litigate during the condemnation proceedings, would run afoul of the salutary policy and purpose of the res judicata doctrine. It is concluded, therefore, that res judicata bars the plaintiffs listed above from litigating the issue of fraud or misrepresentation in the acquisition of the easement. See Loesch v. United States, supra, 227 Ct.Cl. at 55, 59, 645 F.2d at 920, n. 21, 923, n. 27. For this reason, the flowage easement claims of these plaintiffs are to be dismissed and accordingly are no longer considered triable issues in these cases.

### E.  Fraud and Misrepresentation

■ Sections A–D of this order, supra, have determined that flowage easement claims clearly are not triable issues in these five consolidated cases as to 90 of the 95 plaintiffs. Those five plaintiffs whose flowage easement claims fall outside the pale of the defenses successfully asserted by defendant and discussed in sections A–D, supra, are all in case docket No. 340–78 and are identified as:

John W. Crowe Jr. & Kathleen K. Crowe (11)

Earl Mangin (27)

Charlotte Simonson (41)

John B. & Sally C. Taylor (44)

John B. Taylor, Sr. & Nancy Keith Taylor (45)

As to whether the flowage easement claims relating to these five plaintiffs are viable triable issues, the matter is less clear.

The main thrust of plaintiffs' flowage easement claims is the broad and generalized contention that the flowage easements were obtained from plaintiffs by fraud and misrepresentation. The five consolidated complaints allege that the flowage easement claims of each plaintiff are identical (Complaint, Par. 3). Further, each complaint alleges that "[U]nited States Army Corps of Engineers personnel's misrepresentation of the true facts to the United States Congress resulted in a shortage of funds to purchase proper flowage easements for the high-lift dams" (Complaint, par. 11), and that "[D]efendant's shortage of funds resulted in fraud and misrepresentation in purchasing of flowage easements, setting of ordinary high water marks in an unconsti-

tutional manner * * *." (Complaint 12.) This is the extent of plaintiffs' fraud and misrepresentation allegations in their complaints. In their pretrial submission, plaintiffs' fraud and misrepresentation issues are most broad, far reaching and generalized. The essence of the statements in plaintiffs' pretrial submission is that "high echelon 'Corps' employees" or "Corps employees" committed fraud, or misrepresented matters to plaintiffs, during the course of acquiring flowage easements from plaintiffs. The pretrial submission of plaintiffs does not provide the specificity necessary to flesh-out the bare allegations of fraud and misrepresentation asserted by plaintiffs.

Plaintiffs' pleadings and presentations are not a model of clarity. As a result, it is difficult to analyze plaintiffs' factual contentions and assertions. After a struggled analysis, it is concluded that plaintiffs' assertions of irregularities in the flowage easement and erroneous determinations of the ordinary high-water mark are made within the framework of their flowage easement fraud and misrepresentation claims.

Plaintiffs use the terms "fraud" and "misrepresentation" most loosely, interchangeably, and in a very generalized manner. Since it is concluded herein, that any misrepresentation claims which plaintiffs could derive, based on the allegations of their complaints and their pretrial submission, would sound in tort and therefore are beyond the jurisdiction of the court, it is only necessary to consider the fraud aspect of plaintiffs' flowage easement claim.[2]

In its first motion in limine, defendant asserts that a bare allegation of fraud is not sufficient to state a proper cause of action. It is long established that in order to state a cause of action based on fraud, the complaint must set forth distinctly each particular act of fraud relied on, specifying *by whom and in what manner* these acts were perpetrated, with such definiteness and reasonable certainty that the court might see that, if proved, a finding of fraud would be warranted. *See Chamberlain Machine Works v. United States,* 270 U.S. 347, 349, 46 S.Ct. 225, 226, 70 L.Ed. 619 (1926); *see also Harvey v. Sadler,* 331 F.2d 387, 390 (9th Cir.1964). The Rules of this court also provide that complaints which assert fraud as the basis for a cause of action shall state with particularity the circumstances constituting fraud. RUSCC 9(b).

Defendant, in its first motion in limine, seeks, in effect, dismissal of plaintiffs' flowage easement fraud claims for failure of the complaints to state proper causes of action for fraud. There is no doubt but that the complaints in these five consolidated cases fail to state proper causes of action for fraud. Plaintiffs impliedly recognize this fact for the only direct response they make to defendant's motion in limine on this point is the following statement: "Federal Rules of Civil Procedure Rule 7 [sic Rule 8], provides for notice pleading." Notice pleading is allowed in federal courts except where the claim asserted is based on fraud, in which case the complaint must be supported by specific allegations. Although pleading rules are liberal in federal courts, these rules do not

---

**2.** In its answers to the complaints, defendant asserts as a Fourth Defense, that the misrepresentation cause of action, *inter alia,* sounds in tort and thus is beyond the jurisdiction of this court citing 28 U.S.C. Sec. 1491 (1976), as amended on October 1, 1982, 96 Stat. 25, 39–40. The assertions in plaintiffs' pretrial submission against "high echelon 'Corps' employees" and " 'Corps' personnel" reflect claims based on negligent misrepresentation, wrongful inducement or the careless performance of a duty allegedly owned. These are claims that sound in tort. These flowage easement misrepresentation claims must be dismissed as be-

yond the jurisdiction of this court. Accordingly, the flowage easement misrepresentation claims of all plaintiffs are not triable issues in these five consolidated cases. *See Somali Development Bank v. United States,* 205 Ct.Cl. 741, 749–50, 508 F.2d 817, 821–22 (1974). In the *Somali* case, an inaccurate appraisal was at issue. Here, alleged inaccurate flowage easements are in question. In both cases, the misrepresentation claims flowing therefrom were deemed torts. *See also Aetna Casualty & Surety Co. v. United States,* 228 Ct.Cl. 146, 163, 655 F.2d 1047, 1059 (1981).

dispense with the requirement for specificity and particularity with which claims based on fraud must be stated in complaints. *Duane v. Altenburg,* 297 F.2d 515, 518 (7th Cir.1962). Complaints charging fraud which fail to state "with particularity" the circumstances constituting fraud as required by 9(b) are subject to dismissal. *See Lincoln Nat. Bank v. Lampe,* 414 F.Supp. 1270, 1279 (D.C.N.D.Ill.1976); *Barry v. St. Paul Fire & Marine Ins. Co.,* 555 F.2d 3, 13 (1st Cir.1977). Finally, it is to be noted that RUSCC 9(b) provides protection for defendant and its personnel, as well as nongovernment employees associated with government personnel in a common endeavor, from unjustified injury to their reputations and good will by requiring a greater degree of particularity in averments of fraud than is ordinarily required by the concept of notice pleading established in Rule 8.[3] In such situations, plaintiffs alleging fraud must specify the time, place and content of a false representation or fraudulent act, and the full nature thereof. Conclusory language asserting fraud is insufficient. *See Lincoln Nat. Bank v. Lampe, supra,* 414 F.Supp. at 1279. Plaintiffs do not in their complaints or their pretrial submission identify those government individuals who are responsible for the fraud about which they complain. Testimony at trial about unidentified high-echelon Corps employees would be inadmissible. *See Boraiko v. United States,* 146 Ct.Cl. 814, 817 (1959).

There is no question but that plaintiffs' complaints are defective in asserting fraud claims. Further, plaintiffs' pretrial submission does little to cure this deficiency. Accordingly, neither defendant nor the court can be sure just what the limits or exact specifics of plaintiffs' fraud claim are. The first of the five complaints in question was filed on April 14, 1978, and the last was filed on November 17, 1980. The *Loesch* case, *supra,* was decided by the Court of Claims on March 11, 1981. In that opinion, comment was made on plaintiffs' loose and very generalized approach to the issue of fraud. The trial in *Loesch,* which was allowed to proceed on generalized and conclusory fraud allegations, establishes clearly the necessity for pleading specifics and particularity relative to causes of action based on fraud. *See Loesch v. United States, supra,* 227 Ct.Cl. at 54–63, 645 F.2d at 920–25. Counsel in these cases also represented the plaintiffs in the *Loesch* case. Given this background and given the long period of time available to counsel to draft a complaint by amendment or as an original matter, which would comply with the requirements of Rule 9(b) and established case law relative to causes of action based on fraud, dismissal of these fraud claims for violation of Rule 9(b) would not be unreasonable. There is absolutely no excuse for counsel's failure to draft proper pleadings in these cases given their experience. Further, to now allow plaintiffs to amend complaints to specify and particularize their conclusory allegations of fraud would most probably lead to further delay in these cases since defendant would undoubtedly, and properly so, seek discovery relative thereto.[4] *See*

---

**3.** This is especially important in these cases where loose and conclusory allegations of fraud have been asserted in the complaints, in plaintiffs' pretrial submission, in plaintiffs' reply to defendant's motion in limine, and in non judicial statements by plaintiffs' counsel against a number of government and non government individuals.

**4.** A reading of defendant's pretrial submission shows that it has focused only on the erosion issue. Defendant does state in its pretrial submission that "[p]laintiffs' claims with respect to fraud and misrepresentation do not meet the minimum standards of pleading required by the Rules of this Court and must be dismissed." It is not unreasonable to conclude that defendant,

relying on the view that the complaints failed to properly plead causes of action in fraud most probably did not prepare for trial on those fraud issues. Such a view has been found justified herein. Further, defendant waited until plaintiff submitted its reply to defendant's pretrial submission, which was transmitted on or about November 15, 1982, before filing its motion in limine on November 22, 1982. This ostensibly was done in order to see if plaintiffs' pretrial submissions might supply the necessary specificity and particularity relative to its broad and generalized allegations of fraud. When this did not occur, defendant properly resorted to the motion in limine as a pretrial

*Huling v. United States,* 185 Ct.Cl. 407, 416, 401 F.2d 998, 1003 (1968). Finally, plaintiff's reply to defendant's motion in limine provides no good reason why the flowage easement fraud claims should not be dismissed.

It is concluded that the flowage easement fraud claims of all plaintiffs, including plaintiffs Nos. 11, 27, 41, 44 and 45 in docket No. 340–78 shall be dismissed for failure to state with particularity the fraudulent conduct relied on as required by RUSCC 9(b). *See Dilatush v. United States,* 151 Ct.Cl. 405, 408 (1960).

### Summary

For reasons discussed above, defendant's first motion in limine is granted and plaintiffs' flowage easement claims are dismissed. This conclusion is based on defendant's motion in limine and supportive documentation, plaintiffs' reply to defendant's motion in limine and the pretrial submissions of the parties. Accordingly, no evidence shall be presented, nor shall any evidence be received, at trial, with respect to flowage easements which were obtained by the government from plaintiffs in these five consolidated cases.

### III.

Defendant concedes that plaintiffs are entitled to a trial on the erosion issue.[5] In its second motion in limine, defendant, however, seeks an order precluding testimony by certain individuals plaintiffs propose to call as witnesses in the forthcoming erosion issue trial.[6] Defendant advises its motion is based on plaintiffs' pretrial submission and on affidavits of certain proposed witnesses identified by plaintiffs which are attached to defendant's brief in support of its second motion in limine.

As indicated earlier, plaintiffs have listed over 90 individuals as prospective witnesses and have also identified categories of jobs (no individuals are identified) from whom other individuals would be selected to serve as prospective witnesses. This prospective witness list could easily exceed 200. Such a possibility calls for close examination of plaintiffs' witness list and a winnowing or culling approach to such a list in order to arrive at a realistic and sensible approach to trial. The goal in this regard is to achieve an expeditious, just, fair and inexpensive trial on the issue in dispute. This goal is inhibited, if cumulative, irrelevant and wasteful testimony is permitted or if testimony is permitted from individuals on subjects about which they concede they lack competency.

Plaintiffs, in their reply to defendant's second motion in limine first state that, "[t]he attempt to limit the testimony by Motion In Limine is inappropriate and must be denied." Plaintiffs further state that the motion in question "is so broad as to prevent Plaintiffs from receiving a fair trial." Finally, plaintiffs, citing Federal Rules of Evidence, Rules 401 and 402 [Relevant evidence] and Rule 101 [Scope of Rules], without any meaningful discussion, state that [t]he relevance of any evidence cannot be determined prior to a determination of the issues to be tried." Other than the above three statements, plaintiffs do not come to grips with the specifics of defendant's motion in limine and thus plaintiffs' reply provides no assistance at all to the court in its consideration of the matter.

### A.

A motion in limine is a useful tool to prevent a party before trial from

---

vehicle to eliminate the flowage easement claims as viable triable issues.

**5.** It should be borne in mind, however, that the erosion claims of some plaintiffs may be found, as a result of trial, to be barred by the statute of limitations. *See Lacey v. United States,* 219 Ct.Cl. 551, 559–61, 595 F.2d 614, 618 (1979); *see also United States v. Dickinson,* 331 U.S. 745, 747–50, 67 S.Ct. 1382, 1384–1385, 91 L.Ed. 1789 (1947), and *Klein v. United States,* 152

Ct.Cl. 221, 224, *cert. denied,* 366 U.S. 936, 81 S.Ct. 1661, 6 L.Ed.2d 847 (1961).

**6.** In the alternative, defendant seeks an order compelling plaintiffs, in any application for a subpoena issued pursuant to Rule 45(a), to assert that the witness whose attendance is sought to be compelled is a noncumulative witness on the erosion issue. This seems to be a reasonable request.

encumbering the record with irrelevant, immaterial or cumulative matters. Such a motion enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial. *See* 60 C.J.S. Motions Sec. 2 (1969). A judge, pursuant to RUSCC 16, may appropriately rule on the admissibility of proposed testimonial evidence before trial. *See* 3 *J. Moore, Moore's Federal Practice,* Para. 16.16, pp. 16–34 (3d ed. 1982); *see also Jiffy Foods Corp. v. Hartford Accident and Indemnity,* 331 F.Supp. 159, (W.D.Pa.1971). The Federal Rules of Evidence, including those Rules relied on by plaintiffs and cited above, do not inhibit a judge in this regard, nor does granting a motion in limine preclude plaintiffs from receiving a fair trial. *See Zenith Radio Corp. v. Matsushita Elec. Ind. Co., supra,* 505 F.Supp. at 1140–42.

Under RUSCC 16, the court has the power to render pretrial evidentiary rulings. RUSCC 16 is similar in material respects to FRCP 16. *See* Comment, *The Evidence Ruling At Pretrial In The Federal Courts,* 54 Calif.L.Rev. 1016 (1966); *see also* 21 *C. Wright and K. Graham, Federal Practice and Procedure,* Sec. 5037, n. 19 (1977). Some feel a federal trial court has inherent power to make advance rulings on the admissibility of evidence. *Id.* Sec. 5047 at p. 194. Further, the court's authority to render pretrial evidentiary rulings is supported by and consistent with the Federal Rules of Evidence. *See Zenith Radio Corp. v. Matsushite Elec. Ind. Co., supra,* 505 F.Supp. at 1141, and the *Manual for Complex Litigation,* Sec. 4.57 (5th ed. 1981), now in use in federal trial courts. Since the court has the power and the authority to rule on evidentiary matters before trial, it is appropriate to give consideration to defendant's second motion in limine.

### B.

▆▆▆ Many of the testimonial evidentiary rulings sought by defendant are swallowed up by the decision reached in Part II of this order that the flowage easement claims are not a triable issue in these con-

solidated cases. Since the flowage easement issue no longer is a matter for trial, prospective witnesses associated with this issue properly should be eliminated as potential witnesses in these cases.

1. Plaintiffs advise they intend to call as witnesses "[a]ll landowners in Loesch, et al., * * *." Defendant seeks to preclude the testimony of these landowners on the ground their testimony would be irrelevant. To the extent that said testimony relates to the flowage easement issue, defendant's motion to preclude their testimony is well taken. To the extent these landowners are to be used as expert witnesses relative to the "physical characteristics of water, soil, wind, wind waves and how the noted elements combine to cause erosion," defendant's motion to preclude their testimony is also well taken. Plaintiffs have not specifically responded to defendant's motion to preclude the testimony of the *Loesch* landowners. Without more, defendant's motion, since it is otherwise reasonable and supportable, has merit. Plaintiffs have failed to show that testimony from the *Loesch* landowners, in any event, would be helpful. Indeed, such testimony most probably would be irrelevant *vis-a-vis* the different lands here in issue. It is not only proper but required of a court that testimony on matters not relevant to the issues before the court be precluded. *See United States v. Manning,* 509 F.2d 1230, 1234 (9th Cir.1974), *cert. denied,* 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40. Defendant's motion to preclude testimony in these cases from the *Loesch,* et al. landowners is granted. *See* FRE 401 and 402 and 702, especially, the Advisory Committee's Note to Rule 701; *see also Rozier v. Ford Motor Company,* 573 F.2d 1332, 1347 (5th Cir.1978).

2. Plaintiffs intend to call Department of Justice attorneys Robert Simpkins (St. Louis, Missouri) and Bradley Williams (Indianapolis, Indiana). Their proposed testimony as to the flowage easement issue is irrelevant. *United States v. Manning, supra.* As to the erosion issue, both Simpkins and Williams advise, in affidavits attached to defendant's second motion in limine, that

they have no expertise or information on "hydrological testimony, wave action, damage to residue and intermittent flowage easements," areas in which plaintiffs intend to interrogate them at trial. It is deemed reasonable, under the circumstances, to preclude their testimony at trial. *See Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 848 (10th Cir.1979). Plaintiffs have not responded specifically to defendant's contentions in this regard. Accordingly, defendant's motion to preclude the testimony at trial of Robert Simpkins and Bradley Williams is granted.

3. Plaintiffs intend to call District Engineers and District Counsel (otherwise unidentified) from Corps of Engineers offices in Huntington, West Virginia; Nashville, Tennessee; and Louisville, Kentucky, relative to the ordinary high water mark issue. Since, this issue is embraced within the flowage easement issue, such testimony would be irrelevant. Moreover, affidavits of present District Engineers and District Counsel of the above three offices, attached to defendant's motion in limine, establish that none have any expertise, information or opinion relative to the cause of erosion on the properties in issue. Defendant's motion to preclude the testimony of these District Engineers and District Counsel at trial is granted.

4. Plaintiffs list as prospective witnesses "Federal Judges that conducted condemnation trials if they volunteer to testify." The testimony of federal judges is totally irrelevant to the remaining issue, the cause of the erosion on plaintiffs' properties. The flowage easement issue no longer exists in these cases. Moreover, the listing of unnamed federal judges as potential witnesses fails to comply with the Pretrial Order filed August 3, 1981, in these cases, which provides in Section 1(d)(1) that the name and address of each witness that plaintiffs propose to call must be set forth in their pretrial submission. Plaintiffs have not responded specifically to defendant's contentions on this matter. Defendant's motion to preclude the testimony of unnamed federal judges, or subsequently named federal judges, in these cases is granted.

5. Plaintiffs list as a prospective witness a Smithland Dam appraiser, John M. Smith of Paducah, Kentucky, who was an independent contract appraiser for the Corps of Engineers. Mr. Smith, plaintiffs advise, is to testify "as to methods and exhibits furnished by defendant for appraisals." It is obvious this prospective witness is associated with the flowage easement issue. Since this issue is no longer a triable issue in these cases, this prospective testimony is irrelevant. Defendant's motion to preclude the testimony of John M. Smith is granted.

6. Defendant's motion to preclude the testimony of Paul Doem, a government appraiser, and J. Paul Allen, Real Estate Appraiser, is granted since their prospective testimony relates to the flowage easement issue, which is no longer a triable issue in these cases.

7. Defendant's motion to preclude the testimony of Mary Jane Crowe, Jessie Goetzman, Harry Fitzgibbon, Henry and Velma Hughes, Don J. McDue, Vernon and Velma Moss, Charles and Clarence Oldham, Bob Perry, Franklin and Dorothy Stasch, and Roy and Juanita Lamar on the flowage easement issue is granted. Testimony from these individuals on the erosion issue may be relevant if said testimony relates directly to any of the properties in issue in these cases and is not otherwise merely cumulative. Testimony from these individuals relative to properties not in issue in these cases is not relevant and will be precluded at trial.

8. Plaintiffs list as a prospective witness, Hubert Voges, appraiser and Perry County Surveyor. His prospective testimony will relate to the flowage easement issue and thus, for reasons given previously, his prospective testimony is properly precluded. The same is true of plaintiffs listing, as prospective witnesses, "County Assessors and County Auditors of each county where plaintiffs' lands were taken." Testimony from these *unnamed* officials, a violation of Section 1(d)(1) of the August 3, 1981 pretrial order, will be precluded at trial.

9. Defendant seeks to preclude the testimony of "Directors of Soil Conservation Service for each county where plaintiffs lands are being taken * * *," and "Directors of Agricultural Stabilization and Conservation Service for each county where plaintiffs' lands are being taken * * *." Again, any testimony by these *unnamed* officials on the flowage easement issue will be precluded. Further, there is no showing that these officials have any information or expertise on the erosion issue as it pertains to the specific properties in issue in these cases. Finally, plaintiffs have not specifically contested defendant's motion as to these matters. Accordingly, defendant's motion to preclude testimony from these officials is granted.

10. Defendant seeks to preclude testimony from "Selected personnel with long experience of patrolling 'Ohio River'" of the United States Coast Guard. Plaintiff's listing as prospective witness "Selected personnel * * *" violates Section 1(d)(1) of the pretrial order. Likewise, plaintiffs' listing as prospective witnesses of "Selected personnel with long experience on manipulating gates for government in pools affected * * *" is defective. Defendant's motion, which has not been specifically contested by plaintiffs on these matters, to preclude the testimony of "Selected personnel" as mentioned above is granted.

11. Plaintiffs list Max Bohrer, Corps of Engineers, as a prospective witness on flowage easement and erosion matters. The flowage easement issue is no longer a triable issue in these cases. Defendant points out in its motion, supported by an affidavit from Max Bohrer, that Mr. Bohrer has no expertise, information or opinions relative to hydrology, wave action or erosion, topics on which plaintiffs intend to question him at trial. Plaintiffs do not contest defendant's motion in this regard. Accordingly, testimony from Mr. Bohrer would not be helpful in these cases. Defendant's motion to preclude the testimony of Max Bohrer is granted.

12. Plaintiffs list G.A. Fuquay of San Clemente, California as a prospective witness on " * * * loss due to construction of high-lift dams from erosion." Defendant moves to preclude the testimony of Mr. Fuquay, after presuming what plaintiffs intend to do at trial through Mr. Fuquay. The court understands that Mr. Fuquay is plaintiffs' principal expert witness. As such, his testimony should not be precluded without the most compelling of reasons. The fact that plaintiffs do not specifically address this matter in their reply to defendant's motion is overlooked. While the report defendant believes Mr. Fuquay will rely on raises questions of relevancy and materiality, it is felt, under the circumstances, they are matters better handled at trial rather than on a motion in limine. Defendant, however, is entitled to know what plaintiffs' experts' testimony is to cover at trial. On the basis of plaintiffs' pretrial submission, Mr. Fuquay's testimony at trial, as matters now stand, will only cover " * * * loss due to construction of high-lift dams from erosion" on the properties in issue in these cases. Causation, it would appear from plaintiff's pretrial submission, will not be a topic that Mr. Fuquay will cover at trial. Defendant's motion to preclude the testimony of G.A. Fuquay is denied.

13. Plaintiffs list Billy H. Johnson and Paul K. Senter as prospective witnesses relative to a study they authored. Plaintiffs submit the following statement as the essence of their proposed testimony: "Study on Cannelton Dam on increase of flood heights caused by loss of Valley Storage." This study, which was hypothetical, dealt with the possible effect on the Cannelton Dam pool stages if levies were erected in certain reaches of the river. These levies have not been built and there is no present proposal to build them. Defendant contends that neither the study nor the proposed testimony would be helpful in resolving the erosion issue to be tried. Defendant has attached to its motion in limine affidavits from Mr. Johnson and Mr. Senter in which they state they have no knowledge of the properties in issue and no expertise, information or opinions relevant to the erosion issue in this case. They also state they

have not prepared any studies, nor have they reviewed any studies or collected any data concerning the causation of erosion along the Ohio River. They further state they have not expressed any previous opinions on matters at issue in these cases. Plaintiffs have not responded to these matters in their reply to defendant's second motion in limine. To the extent plaintiffs are attempting to have Mr. Johnson and Mr. Senter testify as experts on the erosion issue, said attempt must be rejected. The affidavits, mentioned above, show these individuals to be unwilling to serve as experts and, moreover, do not consider themselves experts on the erosion matters present in these cases. *See Kaufman v. Edelstein,* 539 F.2d 811, 821 (2d Cir.1976) and *Karp v. Cooley,* 493 F.2d 408, 424 (5th Cir.1974), *cert. denied,* 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73. Since it appears the testimony in question would not be helpful and would otherwise be irrelevant, defendant's motion to preclude said testimony is granted.

14. Plaintiffs have indicated they intend to call General Henry J. Hatch on the flowage easement issue, the erosion issue and his representations to congressional inquiries. Testimony on the flowage easement issue, as indicated previously, is properly precluded. Defendant has attached to its motion in limine an affidavit from General Hatch in which he states he has not viewed the properties in issue, has no information or knowledge relevant to the issue of causation of erosion on the properties in issue, has not prepared any studies, reviewed studies or collected data as to the cause of erosion on the properties in issue; and finally, that he has no expertise, information or opinion relevant to the causation of erosion issue in these cases. This affidavit indicates that any testimony from General Hatch, who is currently stationed in Germany, would, most probably, be irrelevant to the erosion issue at bar. Plaintiffs have not specifically responded to these matters in their reply to defendant's second motion in limine. On the basis of the materials presently before the court defendant's motion has merit and is granted; the testimony of General Hatch will be precluded at trial of these cases.

15. Plaintiffs have listed Senator Charles Percy as a prospective witness concerning "[r]epresentations to him by Col. Henry J. Hatch." It is felt that, most probably, these discussions would not be helpful in dealing with the erosion issue in these cases. Plaintiffs clearly have not shown the relevancy of these representations. The time of a United States Senator should not be taken up on the skimpy basis presented by plaintiffs herein. The prospective testimony of Senator Percy has not been shown to be relevant and thus is precluded from being taken at trial.

16. Plaintiffs intend to call Paul Henshaw as a witness on flowage easement matters. Testimony on the flowage easement issue, as indicated previously, is properly precluded and defendant's motion in this regard is granted.

17. Plaintiffs have listed Thurman Pugh and William Bradgley as prospective witnesses to "testify as to crop insurance, disaster relief, flooding easements and complaints on erosion." Plaintiffs, although required by the pretrial order of August 3, 1981, did not provide an address for Mr. Pugh and defendant has been unable to locate him. Defendant attached to its second motion in limine an affidavit from Mr. Bradgley in which he states that he has not viewed the properties in issue or any other property along the Ohio River; that he has no information or knowledge relevant to the causation of erosion on the properties in issue; and that he has no expertise, information or opinions relevant to the causation of erosion on the properties in suit. Plaintiffs have not specifically responded to these matters in their reply to defendant's second motion in limine. Since the prospective testimony is irrelevant to the erosion issue in these cases, defendant's motion to preclude the testimony of Messrs. Pugh and Badgley is granted.

18. Plaintiffs have listed Joseph Graham, Ed Kilpatrick, Colonel Samuel Collins, Joseph Gardner, and Chief Judge William Keady as prospective witnesses who will

"testify on erroneous maps and descriptions." These matters are directly related to the flowage easement issue. Affidavits of Messrs. Graham and Kilpatrick, Colonel Collins and Chief Judge Keady, attached to defendant's second motion in limine, all state that the affiants have no knowledge or information relating to "erroneous maps and descriptions" of plaintiffs' properties. The flowage easement issue, as indicated before, is not a triable issue in these cases. Accordingly, defendant's motion to preclude the testimony of the above-named individuals is granted.

### Summary

For reasons discussed above, defendant's second motion in limine which seeks to preclude the testimony of certain individuals and other unnamed personnel at trial of these consolidated cases is granted, except as to the testimony of G.A. Fuquay, in which case said motion is denied. Further, the court, *sua sponte,* has also precluded the testimony of other individuals at trial of these cases for reasons discussed above, *i.e.,* Heibert Foges, County Assessors and County Auditors of each county where plaintiffs' properties are located, and United States Senator Charles Percy. It is the judgment of the court that the decision to preclude testimony in the trial of these cases is proper and required in order to eliminate irrelevant, immaterial, cumulative and unneeded testimony. Such preclusion of testimony will contribute to a more efficient trial process and a less expensive and time consuming undertaking for the court, counsel and the litigants. It will lead, it is believed, to a faster resolution of the litigation at trial and it will not serve to prejudice plaintiffs' right to a fair and just trial. The rulings and determinations reached herein comport fully with the spirit and purpose of the Rules of this court which are "to secure the just, speedy, and inexpensive determination of every action." RUSCC 1.

In an effort to prevent irrelevant and noncumulative evidence from being introduced during trial, in any application for subpoena under Rule 45(a), the party seeking to compel attendance of a witness at trial shall assert, in seeking issuance of a subpoena by the clerk, that the testimony sought from said witness is relevant to the issue of erosion and is not otherwise merely cumulative testimony. *See* note 6, *supra.* The parties are directed to make every effort to remove from their present trial preparations all cumulative, duplicative, irrelevant and immaterial evidentiary matters, whether documentary or testimonial in nature.

In a further effort to achieve trial efficiency, a party will be precluded from using any document as evidence that is not listed in the exhibit list, called for at the December 7, 1982 pretrial conference, except upon a showing of good cause. Good cause may be shown by the necessity for *unforeseeable* rebuttal evidence or by other necessity. It is assumed that every document on a party's exhibit list has been made available to the other side for inspection. Every separate exhibit on the exhibit list shall be premarked in the lower right hand corner of the first page of said document if possible. The opposing party shall file with the clerk a response which states which exhibits are objectionable and why, and which exhibits may be received in evidence.

Finally, in light of the preclusion order entered herein, each party shall file with the clerk of the court, on or before June 15, 1983, a witness list identifying by name, address and occupation each prospective witness; whether the witness is to serve as a fact or an expert witness; and a short summary of the substance of the witness' proposed testimony. In the case of an expert witness, a party shall advise in this witness list whether the expert has, or intends to prepare a report. If a report is prepared, or is to be prepared, it must be made available to the other side 60 days prior to trial. If no report is to be prepared, a narrative statement of the critical conclusions, with support therefor, reached by the expert shall be set forth in a separate part of the witness list filed with the clerk.