### GILA RIVER PIMA–MARICOPA INDIAN COMMUNITY, et al.

### v.

### The UNITED STATES.

### No. 236–C.

United States Claims Court.

Sept. 18, 1985.

Z. Simpson Cox, Phoenix, Ariz., for plaintiffs.

Bernard M. Sisson, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht II, for defendant.

---

## ORDER

MEROW, Judge.

### Introduction

This matter comes before the court on defendant's motion *in limine* and plaintiffs' opposition thereto. At issue is the scope of the proceedings remaining in this matter following the determination of the Court of Claims reported at 231 Ct.Cl. 193, 684 F.2d 852 (1982).

### Facts

Proceedings in this matter before the Indian Claims Commission were transferred to the Court of Claims in 1978. 42 Ind.Cl.Comm. 202. In these proceedings, plaintiffs claimed compensation for the loss of that irrigation water from the Gila River which, it was asserted, they could have captured each year since 1868 and beneficially utilized on their tribal lands but which was, instead, diverted by upstream users.

On January 7, 1981 the trial judge of the Court of Claims filed an opinion concluding that, under the applicable "fair and honorable dealings" standard of the Indian Claims Commission Act, 25 U.S.C. § 70a, the United States was liable for its failure, prior to 1905, to take appropriate action to preserve or restore plaintiffs' Gila River irrigation water supply. Liability after 1905 was rejected. Extensive findings of fact were set forth.

The trial judge's opinion and findings were then appealed to the Court of Claims which, after briefing and argument, issued the decision remanding the matter to the trial judge as cited above. The court noted that:

> This opinion incorporates that of Trial Judge Merow, with modifications and deletions by the court after briefing and oral argument. The trial judge's findings of fact are adopted (but not printed herewith) as modified by our order of this date. Any findings contained in this opinion, not included in the formal findings of fact, shall also be considered a finding of the court.

231 Ct.Cl. at 194, 684 F.2d at 853.

The only findings deleted by the court were those containing certain quantifications as to upstream depletions and resulting additional acres that could have been cultivated on the Gila River Indian reservation for each year from 1868 to 1904 where a deprivation had been found (last three sentences of finding 46 and findings 47, 48). The court adopted the remaining findings limiting liability to the period prior to 1905, establishing the years of water deprivation, the level of cultivation on the Gila River Indian reservation and relevant stream flow statistics.

Upon remand to the trial judge, a pretrial order was issued on November 30, 1982 providing for the exchange of materials (exhibits, witnesses, etc.) required for the proceedings remaining to determine the amount of recovery. Following a series of motions for extensions of time, on June 28, 1984 an order was issued as follows (in part):

> This matter comes before the court on plaintiffs' motion filed June 28, 1984 for an enlargement of time. The motion notes that defendant has no objection to the enlargement sought.
>
> By its order of August 20, 1982 the Court of Claims denied reconsideration of its decision of June 30, 1982 in this matter. The June 30, 1982 decision adopted findings of fact issued by the trial judge on January 7, 1981, with certain exceptions relating to specific damage computations (the last three sentences of finding 46 and findings 47, 48). The findings adopted include No. 18 setting forth the uncontrolled natural stream flow requirement per reservation acre cultivated. The amount of pre-1905 upstream depletions were incorporated in the previous record. The pre-1905 years of crop failure are a matter of record. The amount of additional reservation acres that could have been cultivated without relevant pre-1905 upstream depletions, and the value of resulting crops,

should be a relatively simple issue to resolve.

The motion filed June 28, 1984 reports that thousands of pages of records have been recently photocopied and that additional expert witness expense is contemplated—but funds are not available.

The record on which the case has been presented to date already contains a considerable body of records which have not been cited or utilized by counsel in their presentations to the court. To reach a determination of how many additional pre-1905 reservation acres could have been cultivated in years of crop failure, absent relevant upstream depletions, should not have required extended additional effort or expense by counsel. Based upon the extensive record developed to date, including expert reports which touch on the matter still at issue, a final resolution should have been reached prior to this date. It would be difficult to develop a case better structured for a compromise monetary settlement at this point.

In any event, counsel have shown no good reason for any additional extended pretrial effort given the limited nature of the task remaining to be accomplished in this litigation. This is particularly the case where such additional witness expense directly serves to reduce any award to plaintiffs.

Following additional motions for time enlargements by plaintiffs, defendant has filed the instant motion *in limine* seeking an order limiting any evidence at trial to that which tends to prove or relates to damages due to crops lost by reason of the upstream diversion of water from 1870 to and including 1904. Defendant notes that plaintiffs have submitted extensive pretrial materials relating to matters after 1904. Defendant asserts that it appears that plaintiffs seek to relitigate the question of

liability as set forth in the opinions cited above.

Plaintiffs oppose defendant's motion, urging that the question as to how long the damages continued has yet to be resolved and that they are entitled to recover for all the natural and probable consequences of the liability found.

*Discussion*

Given the difficulty which exists in bringing this long pending litigation to a conclusion, the use of a motion *in limine* at this point is most appropriate. *See Baskett v. United States,* 2 Cl.Ct. 356 (1983).

Plaintiffs, in effect, concede that the prior opinions in this matter end liability at 1904. What plaintiffs seek is, in essence, a reconsideration of the prior decisions. It is concluded that this approach is not an available procedure at this stage in the litigation.

The prior determinations now constitute the law of the case. *United States v. Turtle Mountain Band of Chippewa Indians,* 222 Ct.Cl. 1, 612 F.2d 517 (1979). Had the matter remained at all times at the judicial level occupied by a trial judge of the Court of Claims, some additional freedom to reconsider a prior determination would exist. *Champaign-Urbana News, etc. v. J.L. Cummins,* 632 F.2d 680, 683 (7th Cir.1980). However, once appealed, the mandate of the appellate court must be followed. *Northern Helex Co. v. United States,* 225 Ct.Cl. 194, 197–202, 634 F.2d 557, 560–62 (1980).

The transfer of this matter to the United States Claims Court pursuant to section 403 of Pub.L. No. 97–164, 96 Stat. 25, 57 (1982), does not change the circumstances. A Claims Court judge occupies the same office previously held by a trial judge of the Court of Claims, albeit with added duties.[1]

1. Thus, in discussing the constitutionality of the provision of Pub.L. No. 97–164 reconstituting the trial division of the Court of Claims into a United States Claims Court comprised of the trial judges of the Court of Claims, H.R.Rep. No.

96–1300, 96th Cong., 2d Sess. 23, n. 25, states as follows:

"Article III, section 1, of the Constitution explicitly empowers the Congress to ordain and establish inferior courts. Consequently, the only questions concern the relation between the

This is not to indicate that, were freedom to reconsider present, this action would be taken. Plaintiffs have set forth no valid reason why the prior determinations should be reconsidered.

In short, as reconsideration of prior determinations, as adopted on appeal, is not possible or even appropriate if possible, proceedings in this matter must now be addressed only to that liability for damages consistent with the established findings.

It is ORDERED:

(1) Defendant's motion *in limine* is allowed and the evidence to be proposed and admitted in the remaining proceeding shall be limited to damages through 1904;

(2) The time within which plaintiffs shall revise and furnish (or refurnish) their initial submissions in accordance with this order, pursuant to the Rule 16 order filed November 30, 1982, is enlarged to and including November 8, 1985.

power of Congress, under Article I, section 8, cl. 18, of the Constitution to alter, enlarge, or restrict the functions of existing federal officers and the requirement of the Appointments Clause, Article II, section 2, cl. 2, that appointments as officers of the United States be made in the manner prescribed by that clause. Stated differently, this involves a reconciliation of the Supreme Court's decisions in *Shoemaker v. United States,* 147 U.S. 282, 301, 13 S.Ct. 361, 391, 37 L.Ed. 170 (1893), and *Buckley v. Valeo,* 424 U.S. 1, 118–36, 96 S.Ct. 612, 681–90, 46 L.Ed.2d 659 (1976). The earlier case stated the principle that Congress may, by statute, confer new duties on officers of the United States, at least where the new duties are 'germane' to their existing functions, without the necessity of reappointment under the Appointments Clause. The later holds that Congress may not itself appoint officers of the United States.

"The Committee has concluded that the carryover of the trial judges into the Claims Court is a modification of an existing position rather than a legislative appointment to a new one, governed by *Buckley.* The bill merely would confer 'germane' new duties and extend the tenure of the existing trial judges as permitted by *Shoemaker,* rather than create a new office."